DE BRUIN et al. v. SANTO DOMINGO LAND & IRRIGATION CO. et al.

. (No. 5830.)

(Court of Civil Appeals of Texas. San Antonio. April 11, 1917. Rehearing Denied May 9, 1917.)

1. TRIAL ☞390—FINDINGS—TIME TO FILE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2075, requiring findings and conclusions to be filed within 10 days after court adjourns, additional findings cannot be filed after such 10-day period.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 913.]

2. APPEAL AND ERROR ☞274(7)—EXCEPTIONS TO FINDINGS.

Where the record contains a statement of facts, the court's findings may be attacked under an exception to the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1638–1640, 1643.]

3. APPEAL AND ERROR ☞1052(5)—HARMLESS ERROR—ADMITTING EVIDENCE.

Any error against plaintiff in admitting evidence bearing only upon defendant's cross-action is harmless, where no recovery was had on such cross-action.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4175.]

4. MORTGAGES ☞270—SUFFICIENCY OF EVIDENCE—NOTICE OF LIEN.

Evidence held to sustain a finding that mortgage bonds were purchased without notice of unrecorded mechanic's lien claims, where the bonds recited they were issued to repay a loan.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 608, 609.]

5. MECHANICS' LIENS ☞116 — PROCEEDINGS TO PERFECT—NECESSITY.

Under Const. art. 16, § 37, giving mechanics' liens to certain persons, and directing the Legislature to provide for their enforcement, which was done by Vernon's Sayles' Ann. Civ. St. 1914, arts. 5621–5639, compliance with the statute is unnecessary as between the owner and claimants, but must be observed as to third parties without actual notice that the material or labor was furnished.

[Ed. Note.—For other cases, see. Mechanics' Liens, Cent. Dig. § 160.]

6. MORTGAGES ☞258 — NOTICE OF LIEN — WHAT CONSTITUTES.

.That a mechanic's lien claimant was in possession of property when mortgage bonds secured by it were purchased does not charge the purchaser with notice .of the outstanding lien claims, unless he .actually knew· of such possession.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 689–691.]

7. MECHANICS' LIENS ☞280(1)—ADMISSIBILITY OF EVIDENCE—WAIVER OF LIEN.

In action to enforce a 'mechanic's lien, testimony by claimants that they did not intend to waive the lien when accepting a chattel mortgage is inadmissible, since the mortgage may have operated as. a waiver as a matter of law.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 557, 558.]

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Suit by J. C. De Bruin and others against the Santo Domingo Land & Irrigation Company and others. From a judgment adjusting the rights of various parties, J.. C. De Bruin and A. M. Lockett & Co. appeal. Affirmed.

Frank C. Pierce, Webster & Green, and F. W. Seabury, all of Brownsville, for appellants. Graham, Jones & George, of Brownsville, and J. R. Monroe, of Rio Grande City, for appellees.

FLY, C. J. This suit was instituted by J. C. De Bruin against the Santo Domingo Land & Irrigation Company, the Bankers' Trust Company, J. G. Fernandez, W. L. Harding, A. M. Lockett & Company, Limited, and John T. Devine. The last-named died, and his widow was made a party. She was the sole heir of John T. Devine, and executrix of his last will and testament. The suit began in Starr county, but, by agreement, was changed to Cameron county. The suit was based upon two contracts between De Bruin and the irrigation company, one being a contract for the construction for the company of a portion of its pumping plant and system of irrigation for 1,200 acres of land belonging to the company, and he claimed for the contract $9,096 and $2,442.81 for extra work and material; the aggregate being $11,538.81, which, less a credit of $8,472.60, left a balance of $3,066.21, of which a recovery was sought on that contract. The other contract was a supplement to the first, and released De Bruin from the work already done, and obligated the company to complete the work, using the tools and outfit, and he claimed that the company appropriated his tools and outfit, and that he was entitled to their value, in the sum of $1,459.45, and also $500 for profits. He asserted a contractor's lien on the company's pumping plant and irrigation system, and prayed for a foreclosure of the same. John G. Fernandez and Mrs. Devine claimed to own $37,500 each of the bonds of the irrigation company, secured by a deed of trust of date September 3, 1912, upon all the properties of the company, in which the Bankers' Trust Company, also made a defendant, was the trustee. A. M. Lockett & Co. claimed a lien on the properties of the company, dated July 20, 1912, for an amount due on the sale and installation of pumping machinery and other matters. W. L. Harding claimed a subcontractor's lien on the property. Fernandez and Mrs. Devine also claimed to own the property of the irrigation company by virtue of a' purchase under the execution of the trust deed by the trustee. They claimed that they had purchased the bonds of the company for value and without notice of any liens, and also claimed subrogation under the liens by reason of the money paid by them for the bonds having been paid to the contractors. The irrigation company admitted the justice of the claims of Fernandez and Devine, and also admitted the debt of Lockett & Co., but denied the existence of a lien to secure the

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

same, and also denied the claims of De Bruin, and filed a counterclaim against him for damages for delay in performing his contract.

The cause was tried without a jury, and judgment rendered in favor of De Bruin for $1,459.45, for the value of his tools and outfit, in favor of A. M. Lockett & Co. for $7,-522.81, against the irrigation company, foreclosure of liens being denied, in favor of the company as against Harding; a dismissal being entered as to the Bankers' Trust Company, relief being denied the company on its cross-action against De Bruin, and Fernandez and Mrs. Devine were quieted in their title to the property. This appeal was perfected by De Bruin and A. M. Lockett & Co.

[1, 2] The first assignment of error of De Bruin assails the action of the court in refusing to give the additional findings of fact requested by appellants. The complaint is that appellants requested the court, on June 27, 1916, to file his conclusions of fact and law; that the court adjourned on June 30, and that the conclusions were not filed until July 10, 1916, the last day on which they could be filed, and thereafter, when an application for additional findings was presented, the trial judge refused to find further facts. The law is plain and unequivocal that only 10 days after adjournment of the court shall be allowed in which to file findings of fact and conclusions of law. Vernon's Sayles' Stats. art. 2075. The court complied with that law fully in filing the conclusions of fact and law. The court had no authority after the expiration of the 10 days to file additional findings of fact, any more than he would have had authority to file all of the findings of fact after the statutory time. State v. Pease, 147 S. W. 649. There is a statement of facts in the record, and appellants could attack the findings of fact under their exception to the judgment below. Voight v. Mackee, 71 Tex. 78, 8 S. W. 623; Bond v. Garrison, 59 Tex. Civ. App. 620, 127 S. W. 839; Walsh v. M. E. Church, 173 S. W. 241. The findings of fact cannot be disregarded because the trial judge refused the additional findings of facts out of time.

[3, 4] The second assignment of error of De Bruin complains of certain evidence of D. D. Jones as to what crops the irrigation company would have raised, if De Bruin had not delayed in doing the work for which he had contracted. If the evidence was improperly admitted, it could not have injured De Bruin, for the reason that the company did not recover on its cross-action, and the evidence bore on the cross-action alone. The assignment is overruled. The court found that the company had fully paid appellant, De Bruin, for all work done by him, and the further finding that the damages of the company were as great as any sum owing to De Bruin was unnecessary, and did not affect the positive finding that he had been paid

in full. Nothing was allowed as damages to the company, but it was decreed that it was not entitled to damages. The judgment totally fails to disclose any offset of damages against De Bruin's claim, and the second, third, fourth, and fifth assignments of error are overruled.

The sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth assignments of error are overruled. The circumstances were sufficient to justify the court in finding that Fernandez and Devine bought the bonds for value, without notice of any liens held by the appellees. The mortgages or liens were not on record, and the testimony fails to indicate that there was actual notice of them. The fact that De Bruin was working on the land was not known to Fernandez at the time he bought the bonds for the bank; in fact, they were bought before De Bruin's contract was made. If the bank had knowledge of the existence of any liens, it must have been obtained through Fernandez, and he swore that he had no such knowledge of the liens of appellants when he bought the bonds. The evidence failed to show that any one connected with the bank knew of the existence of the liens, and therefore Fernandez could not have been charged with knowledge through the bank. There was no recital in the bonds that any liens existed on the property, but merely that the bonds were issued to obtain money to repay a loan contracted to erect an irrigation plant. There was nothing in the recitals giving notice that the contractors had liens on the property. Fernandez denied any conversation with Lockett before the loan was made to the irrigation company, and the trial judge exercised his undoubted prerogative of believing Fernandez in preference to Lockett.

[5] The state Constitution (article 16, § 37) gives a lien to mechanics, artisans, and materialmen, of every class, upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor, and instructs the Legislature to "provide by law for the speedy and efficient enforcement of said liens." In compliance with that constitutional requirement the Legislature passed the act embodied in chapter 2, title 86, articles 5621 to 5639, inclusive, and in that act the mode and method of fixing and preserving the lien is fully and clearly set forth. The act was amended by the Thirty-Fourth Legislature, on March 31, 1915 (Gen. Laws 1915, pp. 223–225), but the amendments have no bearing on this cause, even if the work performed on the irrigation plant had not been performed long before the amendments were enacted. No effort was made by appellants to comply with any provision of the statute in regard to the kind of liens claimed by them, and unless the Constitution is self-acting and fixes the lien, the lien did not exist.

Undoubtedly, as between the persons nam-

ed in the Constitution and the owner of the property, the lien is fixed by the Constitution; but it was clearly contemplated that its efficacy and enforcement was made to depend on laws enacted by the Legislature. As said in Johnson v. Improvement Co., 88 Tex. 505, 31 S. W. 503:

"This provision, as we have frequently held, gives the lien, and simply makes it the duty of the Legislature to provide for its enforcement. It is manifest that this differs materially from other provisions found in our Constitution which confer a right or a jurisdiction to be exercised 'under such regulations as may be provided by law.' It may be conceded that, from the necessity of the case, it must have been contemplated that, in providing for the enforcement of the laws given by the 'section,' the Legislature should have the power to make such reasonable regulations as are requisite to protect the rights of all persons who may have an interest in the contract or in the property."

This was said in upholding the law requiring materialmen to give notice to the owner and filing the account. This was held to be a reasonable requirement to give the owner the opportunity to protect himself. The same ruling was made by the present Supreme Court in Bullard v. Norton, 182 S. W. 668, Bullard v. Lanius Pressed Brick Co., 187 S. W. 1199, and June v. Doke, 35 Tex. Civ. App. 240, 80 S. W. 402.

In the case of National Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966, it was held that as between the owner and the contractor the Constitution fixed the lien, without any notice, filing of claim, or any other act on the part of the contractor; but, so far as innocent subsequent purchasers or mortgagees and lienholders are concerned, the statute must be complied with in order to fix the lien. It was held, however, that actual notice of the lien would be sufficient, without recorded notice, and that where a subsequent lienholder knew that the contractor was at work on the premises when he loaned the money and took his mortgage he would be charged with notice.

The contract between Lockett and the irrigation company was made on August 1, 1912, and that between the company and De Bruin was made on or about October 16, 1912. On March 20, 1913, the notes to Lockett & Co. were executed. De Bruin's plans and specifications were made on October 17, 1917. The notes given to Lockett & Co. were secured by a mortgage on the property sold by Lockett & Co. to the irrigation company, which was acknowledged on August 25, 1913. The note for $20,800, afterwards assigned to Fernandez by the Merchants' National Bank, was dated October 3, 1912, and was secured by $37,500 worth of bonds.

So far as A. M. Lockett & Co., Limited, is concerned, the fact that De Bruin may have been at work on the premises of the irrigation company at the time that the bonds were transferred can be of no benefit. Any notice given by such occupancy of the land by De Bruin could not have informed any one that A. M. Lockett & Co. was entitled to a constitutional lien for material furnished. The circumstances would seem to indicate that A. M. Lockett & Co., by taking the chattel mortgage on the property, waived any lien given by the Constitution. The facts indicate that there was no intention to rely upon the mechanic's or materialmen's lien, but to rely on the chattel mortgage, which was not filed for record until August 29, 1913. The notes were executed for the material furnished by Lockett & Co. long after the bonds had been transferred to Fernandez by the irrigation company and were made payable at dates indicating that no constitutional lien was depended upon to secure the money, and each one of them provided that the title to the property should remain in Lockett & Co. until all the notes were paid off and discharged. No attempt was made to comply with article 5622, Rev. Stats., the notes being made payable at a time when the time for a materialman to act could not under the statute fix a lien on the property. Articles 5621 and 5622 require any one who may furnish material to perform certain acts in order to fix the lien. As said by the Supreme Court in Berry v. McAdams, 93 Tex. 431, 55 S. W. 1112:

"Assuming, however, for the purposes of this case, that the Constitution does give a lien in favor of the class of persons to which appellee belongs, it at the same time requires of the Legislature to enact laws for the enforcement of such lien, which has been done, and we hold that the laws above referred to are within the powers of the Legislature over the subject, and that a failure by the appellee to comply with their requirements defeats his lien claimed under the Constitution. In other words, it is a reasonable and just regulation for the efficient enforcement of the lien of the materialman, which he must comply with in order to avail himself of the benefit of the provisions of the Constitution."

While the court was considering a case in which the material was furnished to a contractor, it holds that the Legislature had power to provide the manner in which the constitutional lien could be enforced by a materialman. In the case of James v. St. Paul's Sanitarium, 24 Tex. Civ. App. 664, 60 S. W. 322, the court said:

"It is not contended that appellant complied with the statute in attempting to fix his lien; but it is insisted that the Constitution gives a lien in favor of materialmen, and that the statute which regulates the manner in which the lien shall be fixed is unconstitutional, in that it is so restrictive as not to afford an efficient method of protecting and enforcing the lien given by the Constitution. Since the trial of this cause the Supreme Court has passed on the question, and decided it against the contention of appellant"—citing Berry v. McAdams.

To the same effect is Johnson v. Griffiths, 135 S. W. 683, and Faber v. Muir, 27 Tex. Civ. App. 27, 64 S. W. 938.

We deduce from the different decisions of this state that the Constitution gives a lien to the persons named thereon, and that, as between the owner of premises on which labor is performed, or for which material is

furnished, and those persons, the lien arises and may be enforced without the aid of the statute, but as to third parties, who have not actual notice of the labor having been performed or the material furnished, the lien is not enforceable unless the statute has been complied with. The evidence in this case shows that neither Fernandez nor Devine had any actual notice that liens for labor or material were in existence. They were not charged with notice of resolutions passed by the board of directors of the irrigation company, with which they had no connection whatever. The language of the bonds, to the effect that they were issued "for the purpose of refunding a loan contracted for the installation of an irrigation system now in course of construction upon the lands embraced in said mortgage," did not give notice of liens, but, on the other hand, would give the impression that the money to pay for the installation of the plant had been borrowed, and would raise the presumption that it would be used for that purpose.

[6] The mere fact that De Bruin may have been in possession of the premises at the time that Devine obtained the bonds would not be sufficient to put the latter upon notice, unless he had actual knowledge of such possession; and if appellee Devine did have actual knowledge of the possession of De Bruin, it would not matter, under the facts, which show that De Bruin was paid for all the work done by him under the contract under which he was working when Devine bought the bonds. He has no lien, because he has been fully paid, as found by the court.

. It is utterly immaterial when the inception of the lien of Lockett & Co. may have arisen, as between him and the irrigation company, if appellee had no notice of it, which they had not. The fourteenth assignment is overruled.

The fifteenth, sixteenth, seventeenth, nineteenth, and twentieth to thirtieth, inclusive, assignments of error complain of the refusal of the court to file additional findings of fact. That is matter disposed of under other assignments, and these are overruled. There is a statement of facts, and appellants could have presented additional facts on any matter by appropriate assignments of error. ·

The court was authorized from the circumstances to find that $37,500 worth of the bonds were hypothecated to John T. Devine about April, 1913, to secure a loan made by the said Devine to the irrigation company. The first, second, third, and fourth assignments of Lockett & Co. are therefore overruled.

[7] All the other assignments of error of Lockett & Co., except the thirty-ninth, have been disposed of under assignments of De

Bruin, and they are all overruled. Most of them are grouped with others presenting different matters, and should not be considered. The court properly refused to allow the witnesses Lockett and Pierce to testify to the matter set out in the thirty-seventh assignment of error. The court properly refused to allow Lockett and Pierce to testify that there was no agreement to waive the materialman's lien, when the chattel mortgage was executed and delivered. There may not have been any such agreement, and still as a matter of law there might have been a waiver. It would have been error to have admitted such testimony.

The judgment is affirmed.