REEVES v. YORK ENGINEERING & SUPPLY CO.*

(Circuit Court of Appeals, Fifth Circuit. March 25, 1918.)

No. 3066.

1. CORPORATIONS ⬤⟳426(9)—OFFICERS—RATIFICATION.
   Where the president of a corporation, who had charge of its buying and selling, purchased machinery, and such machinery was installed by the corporation, and part of the price paid in accordance with the terms of the contract, there was a ratification of the president's act, regardless of his authority to purchase the machinery.

2. MECHANICS' LIENS ⬤⟳32—CONSTITUTIONAL LIENS—PERFECTION.
   Under Const. Tex. art. 16, § 37, declaring that mechanics, artisans, and materialmen of every class shall have a lien upon the buildings or articles made or repaired by them for the value of their labor done thereon, or material furnished therefor, and that the Legislature shall provide for the speedy and effective enforcement of such liens, a seller of ice and refrigerating machinery, which was complete in itself and could be disconnected without injury from the purchaser's plant as it theretofore existed by unbolting four connections, is entitled to a lien thereon.

3. BANKRUPTCY ⬤⟳192—MECHANICS' LIENS—PERFECTION.
   Claimant sold ice and refrigerating machinery to a Texas corporation which became a bankrupt. The machinery was complete in itself and could be disconnected without injury to the bankrupt's plant as it theretofore existed by unbolting four connections. Adjudication in bankruptcy followed less than a month after delivery, and claimant within four months of delivery filed the contract of sale which was in the form of a letter with an acceptance written thereon by the bankrupt. The letter showed that the bankrupt was engaged in manufacturing artificial ice at the place of its address. Held that as claimant had a materialman's lien under Const. Tex. art. 16, § 37, and as the requirements of Rev. St. Tex. 1911, arts. 5622–5627, providing for the filing of the contract within four months, are intended merely to give notice to persons other than the purchaser, claimant acquired a lien valid as against the trustee in

bankruptcy who under Bankr. Act July 1, 1898, c. 541, § 47a, 30 Stat. 557 (Comp. St. 1916, § 9631), took the rights of a lien creditor, for the land on which the machinery was installed could readily be located from the contract.

Walker, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

In the matter of the bankruptcy of the Alliance Milling Company. The York Engineering & Supply Company filed proof of claim, alleging a constitutional and statutory lien, and on the same day it filed a petition, setting up the facts of the transaction out of which the claim arose. J. H. Reeves, trustee in bankruptcy, filed a protest, and, the judgment of the referee allowing the claim and lien having been affirmed by the District Court, he appeals. Affirmed.

Cecil H. Smith, of Sherman, Tex. (J. D. Williamson, of Waco, Tex., J. A. L. Wolfe and Head, Dillard, Smith, Maxey & Head, all of Sherman, Tex., and Thompson, Knight, Baker & Harris, of Dallas, Tex., on the brief), for appellant.

N. C. Abbott, of Houston, Tex., for appellee.

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

BATTS, Circuit Judge. The Alliance Milling Company was adjudged a bankrupt on April 5, 1916. May 23, 1916, the York Engineering & Supply Company, appellee, filed proof of claim in the sum of $2,411.25, alleging a constitutional and statutory lien for material and machinery furnished and placed on the property of the bankrupt; and, on the same day, filed a petition setting up the facts of the transaction out of which the claim arose. The trustee filed a protest. The referee allowed the claim and lien. The trustee excepting, the matter was certified to the United States District Court, where the judgment of the referee was affirmed. The judgment is before this court for review.

On January 15, 1916, the bankrupt entered into a contract with the appellee, by which it agreed to purchase certain ice and refrigerating machinery, as follows: Eleven sections of Shipley double-pipe flooded ammonia condensers, each section to be 8 pipes high, 18 feet 2 inches long, the condensers to be of 2-inch and 3-inch ammonia pipe, together with the necessary stands and header connections for both water and ammonia; each section to have inlet, outlet, pump-out and purging connections; also one purge drum, 10 by 6 long, with connections; one ammonia receiver, 24 in diameter by 16 long, to be of welded pipe, with all necessary pipe connections; one gauge glass, with automatic ball check valves.

Payments were to be 25 per cent. cash on arrival of material, 25 per cent. cash when material was erected, and 50 per cent. in four months' note, bearing 8 per cent. interest, dated and delivered at the time of the second payment. The bankrupt received the material, and, prior to the adjudication, placed the same in its ice plant by

connecting it with its ice machinery then operated by the company. The erection was outside of the old ice plant on a concrete base especially prepared for it, its own weight holding it in place. The machinery was complete in itself and could be disconnected, without injury, from the plant as it had theretofore existed, by unbolting four connections. An employé of the selling company, under the arrangement made at the time of the sale, was sent to see that it was properly erected.. The contract was made with J. N. Rayzor, as president of the purchasing corporation. Delivery was made early in March, 1916.

The report of the referee, supporting the claim of the appellee, both as to the amount and the lien, was excepted to, the exceptions presenting the following points: (1) That the president of the bankrupt corporation did not have authority to bind the corporation by a contract and create a mechanic's lien, either upon the condenser or real property of the corporation, by its installation upon the premises; (2) that, having no authority from the board of directors, the president could not create a mechanic's lien as against this property; (3) that, the condenser being a fixture, the trustee's taking possession thereof (he being an attaching creditor under section 47a of the Bankruptcy Act) was not a ratification so as to create a mechanic's lien; (4) that title to the condenser, it being a fixture, passed by sale of all properties of the bankrupt to the purchaser, and no mechanic's lien existed on the condenser as against the purchaser; (5) the property being sold without any contract reservation of title, no contract lien has since been placed upon the property; (6) the mechanics' and materialmen's statutes made no provision for the retention of lien upon the specific machinery, sold without reservation of title; (7) that the property involved was not of a character to become attached to and made a component part of the realty, so as to give rise to any character of lien; (8) that claimant sold the property pursuant to a written order, and reserved no title, and the property was simply set into the plant, connected with other machinery by removable connections, and its character is such that it constitutes no integral part of the realty, nor such a fixture or addition thereto or improvement thereon as gives rise to a lien under the statutes.

Upon judgment by the District Court in favor of claimants, assignments of error were made to a like effect.

Section 37, art. 16, of the Constitution of Texas, provides:

"Mechanics, artisans and materialmen of every class, shall have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

Article 5621 of the statutes of Texas provides:

"Any person, or firm, lumber dealer, or corporation, artisan, laborer, mechanic, or sub-contractor, who may labor or furnish material, * * * fixtures or tools to erect any house or improvement, or to repair any building or improvement whatever, * * * upon complying with the provisions of this chapter, shall have a lien on such house, building, fixtures, improvements * * * and shall also have a lien on the lot or lots of land necessarily connected therewith, to secure payment for the labor done, lumber, material, machinery or fixtures * * * furnished for construction or repair."

Article 5622:

"In order to fix and secure the lien herein provided for, it shall be the duty of every original contractor, within four months * * * to file his, * * * contract in the office of the county clerk of the county in which such property is situated, and cause the same to be recorded in a book to be kept * * * for that purpose. * * · * "

Article 5623 is with reference to persons furnishing material, etc., to any contractor.

Article 5624 makes provision for the filing and recording of a sworn account, when there is no written contract, and a form of affidavit is given which provides for a description of the improvement and of the lot or tract of land upon which it is placed. It concludes with a proviso to the effect that "a substantial compliance with the above form shall be deemed sufficient to fix and secure the lien."

Article 5626 provides:

"In case the contract is filed and recorded as provided for in article 5527 [5622], a like description of the house, building or improvement, and the lot or tract of land shall accompany the same, as is required in the foregoing forms, except that the same is not required to be under oath."

On the 24th of April, 1916, the York Engineering & Supply Company filed for record the contract between that company and the bankrupt in the form of a letter, dated January 15, 1916, submitting a proposition, and an acceptance in writing of the same date by the "Alliance Milling Company, per J. N. Rayzor, president."

[1] The primary question presented is whether Rayzor, the president of the corporation, could, by his act in buying the property, create a lien upon the thing bought and the realty of the corporation. Rayzor was president of the corporation, and had charge of its buying and selling, and the purchase was made by him. The machinery was installed by the company, and a part of the purchase price was paid by it in accordance with the terms of the contract. Whether or not the president primarily had authority to make the purchase, that which followed constituted a ratification.

If he had not the authority, and if there had been no ratification, the property belongs to appellee. If he had the authority to make the purchase, the legal consequences which follow from such a purchase resulted.

Appellant claims that a lien under the Texas law, on this character of property, is acquired only through: (a) A chattel mortgage; (b) a reservation of title in the sale contract; (c) a mechanic's lien under the Constitution; (d) a mechanic's lien under the statutes. He insists properly that no chattel mortgage was taken, and that there was no reservation of title. His contention that the facts do not bring the claim under the constitutional provision, and that the claimants have failed to comply with the statutory requirements, presents the points to be determined.

[2] The courts of Texas hold that a lien is created by the Constitution of the state in favor of "materialmen of every class" upon "the buildings and articles made or repaired," for "material furnished therefor." The existence of this lien is not dependent upon any action taken under the terms of the statute. Bassett v. Mills, 89 Tex. 167,

34 S. W. 93; Strang v. Pray, 89 Tex. 525, 35 S. W. 1054; National Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966; De Bruin v. Land & Irrigation Co. (Tex. Civ. App.) 194 S. W. 655. If the terms of the Constitution are applicable to the instant case, all the objections of appellant are lacking in merit.

"This provision (of the Constitution)," says the court in Bassett v. Mills, supra, "in so far as it gives a lien, is as broad as language can make it." In Strang v. Pray, supra, the Supreme Court of Texas uses this language:

"It was the intention of the members of the convention which framed and adopted this section of the Constitution to give full and ample security to all mechanics, artisans, and materialmen for labor performed and material furnished for the erection of all buildings and other improvements, and the courts must give such construction to this language as will carry out that intention."

From this language and the decisions examined, it is apparent that the Texas courts give a liberal construction to the provision of the Constitution, in an effort to give effect to its manifest intent. It would have been difficult for the Constitution makers to have used a more comprehensive word than "material," and protection is given "materialmen of every class." The words "buildings and articles made or repaired" are also very comprehensive.

It is contended that, if it should be held that a lien exists in this case, it would be necessary to make a like holding in every instance where machinery was sold by a manufacturer to a dealer, or by a dealer to an individual. Neither proposition is sound. It is easily to be conceived that a lien would follow a sale in one case, when the sale would not have that effect in another. The usual effect of a sale of a piece of machinery is the same as the ordinary effect of the sale of lumber or other material that goes into the construction of a house. If the sale is in the course of business, and without reference to any particular improvement, no lien results, unless it is specifically retained. If, however, the material is sold with regard to the making of a certain improvement, no reason is seen why the constitutional rule should not apply. It is not always the case when gas fixtures are sold, or a cooking range is sold, or engines and boilers are sold, that a lien upon the property so sold, or upon any other property on which it is to be placed, results. But if the material is bought with the purpose of incorporating it into a building or improvements, the terms of the Constitution would seem to apply. The Constitution gives the lien to "materialmen of every class." The lien is given "upon the buildings and articles made or repaired." The language is broad and the purpose is clear. There is nothing to indicate that merely raw material is intended to be included within its terms. Certainly, some classes of manufactured products would always be so included. For instance, no one would think of undertaking to maintain that nails and screws, locks, doors, and windows were not within the terms of the Constitution. No reason is made sufficiently to appear why such machinery as was furnished in the instant case, capable of incorporation into and made a part of the plant and furnished for that purpose, should not be held to be included.

As was suggested in Banner Iron Works v. Ætna Iron Works, 143 Mo. App. 1, 122 S. W. 764:

"In the case of machinery or other articles furnished to a factory or place of business, an important circumstance, in the attempt to ascertain the intention of the proprietor, is the adaptability of the article or machine to the work or business of the place. Thomas v. Davis, 76 Mo. 72, 43 Am. Rep. 756. If the thing furnished was necessary to that work or business, or necessary to the purpose for which the building was designed and used, or was a convenient accessory, or commonly employed in connection with such business, the intention of the proprietor of the establishment to annex it permanently to the realty may be inferred."

It is clear that the condenser was sold and purchased with the view of its being made a part of a particular plant. The purchaser was conducting the business of manufacturing ice. The proposition made by the letter of the claimant, and which was accepted by the ice manufacturing company, described the sections of the condenser to be furnished, indicated their length and included the necessary stands and header connections; also the inlet, outlet, pump-out, and purging connections. It also provided for connections to a purge drum. The ammonia receiver was to have the necessary pipe connections. A provision was to the effect:

"It is understood that the purchaser will furnish the necessary pipe connections between the compresser and condenser, and between the receiver and freezing system. We are also allowed to use part of the present header fittings, provided they are of proper size."

It is apparent reference was made to a system already installed, to which the condenser, etc., described in the letter was to be attached. The understanding between the seller and the buyer, to the effect that the representative of the former should see to the installation, is also evidence of this fact; and, finally, the proof that a base was made upon which the condenser was set identifies the machinery sold with the improvement contemplated at the time of the sale, and which was in part to have been paid for "when material is erected."

Appellant cites authorities to the effect that machinery of the character in question is not of the kind to which the materialmen's liens apply. An examination discloses no conflict with the views expressed. Among the cases cited is Rose v. Persse, 29 Conn. 257, where gas fixtures were held not to be subject to the lien; the court, however, holding that the materials were not furnished in pursuance of any contract for the erection of any building, but by virtue of a mere contract of sale and purchase. In Boston Furniture Co. v. Dimock, 158 Mass. 552, 33 N. E. 647, it was held that portable cooking ranges, with zinc to place them on, and pipes for connection, are not such parts of the building as to entitle the seller to mechanic's lien; the court holding that the true test is structural connection with the building.

In Collins v. Mott, 45 Mo. 100, the court held that the term "improvement," as used in the Missouri act, is synonymous with building, and did not include engines and boilers, stating that:

"No terms are used which include such engine, etc., unless they have become part of the realty, when the lien, of course, would cover them."

In Haslett v. Gillespie, 95 Pa. 371, it was held that where new machinery is furnished for and placed in the old mill, the party supplying the same is not entitled to a mechanic's lien against the building. The court held that the building was neither repaired, altered, nor enlarged; the machinery being a bolt header and a screw cutter, so placed as to be operated by belting already in use.

In Thompson v. Smith, 67 N. H. 409, 29 Atl. 405, 68 Am. St. Rep. 679, it was held that a portable steam engine could be used in a factory could not be made the basis of the claim of a mechanic's lien.

These cases are consistent with the position taken. Many authorities could be cited showing the comprehensive meaning given the word "material," among them Grand Island Bank v. Koehler, 57 Neb. 649, 78 N. W. 265; Selden v. Meeks, 17 Cal. 128; Parker L. & I. Co. v. Reddick, 18 Ind. App. 616, 47 N. E. 848.

[3] The statute is somewhat more comprehensive than the Constitution. To "fix" the lien of the statute, it is required, where a contract is in writing, that it be filed in the office of the county clerk. The building and lot upon which it is sought to fix a lien may be described by a statement to be filed, which need not be sworn to. The statute merely requires "a substantial compliance" with the terms of the article providing for the description. A reasonable construction would be that if the purpose of the law is accomplished, and the owner and persons dealing with him are given the protection to which they are entitled, the law will be held to have been complied with.

The only objection made to the manner of compliance by appellee with the statute was that a statement describing the building and lot was not filed. This objection was not made in the original objections of the appellee before the master, nor in the objections to the master's report, unless included under some generalization.

It could very well be argued, in view of the purpose of the statement, and the provision requiring only substantial compliance, that the contract itself gave sufficient notice of the property to be affected by the lien. The letter constituting the contract was addressed to "Alliance Milling Co., Denton, Tex." At that place the Alliance Milling Company had an ice plant. It was provided that the purchaser would furnish pipe connection "between the compresser and condenser, and between the receiver and freezing system." The sellers were allowed to use part of the "present header fittings." At a number of places "connections" were provided for. The character of the machinery was identified by reference to the manufacture of ice.

As hereafter indicated, if the lien is one provided for by the Constitution, no action under the terms of the statute is necessary for its creation; as to such liens, all that could be provided for by the statute would be the enforcement of the remedy and the protection of the owner of the land and improvement and subsequent lien creditors and mortgagees. At the time of the adjudication of the bankrupt, the trustee took the property under the terms of the statute as if he had been a lien creditor. Section 47a of the Bankruptcy Act. At that time, however, the four months in which, even under the terms of the statute, a materialman might fix his lien had not elapsed. Under the

Constitution the appellee had its lien, and the trustee took subject to the lien. Before the expiration of the four months, the contract between the York Company and the bankrupt was filed, and all of the facts connected with the purchase, delivery, and installation were brought to the knowledge of the trustee. In the case of F. & M. National Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966, the Supreme Court adopts the opinion of the Court of Civil Appeals, in which this language is used:

"The bank cannot insist in this case upon any of the principles of estoppel, for it took the note and mortgage and furnished the money on April 3, 1894, while Taylor was actually at work on the building, and must be held therefore to have legal and full notice of his mechanic's lien and the amount of his debt, and every other fact which inquiry of Taylor would have elicited. At that time Taylor unquestionably had a mechanic's lien, and the taking of the notes and mortgage afterwards presents no principle of estoppel, even if such a defense had been pleaded."

Construing the facts of that case, in connection with the opinion, the court in De Bruin v. Land & Irrigation Co. (Tex. Civ. App.) 194 S. W. 655, said:

"Undoubtedly, as between the persons named in the Constitution and the owner of the property, the lien is fixed by the Constitution. * * * In the case of National Bank v. Taylor, 91 Tex. 78 [40 S. W. 876, 966], it was held that, as between the owner and the contractor, the Constitution fixed the lien, without any notice, or filing of claim, or any other act on the part of the contractor; but, so far as innocent subsequent purchasers or mortgagees and lienholders are concerned, the statute must be complied with, in order to fix the lien. It was held, however, that actual notice of the lien would be sufficient, without recorded notice; and that, where a subsequent lienholder knew that the contractor was at work on the premises when he loaned the money and took his mortgage, he would be charged with notice. * * * We deduce from the different decisions of this state that the Constitution gives a lien to the persons named thereon, and that, as between the owner of premises on which labor is performed, or for which material is furnished, and those persons, the lien arises and may be enforced without the aid of the statute; but, as to third parties who have not actual notice of the labor having been performed or the material furnished, the lien is not enforceable unless the statute has been complied with."

The only objection which can be made to the manner in which appellee complied with the statute is a claim that he failed to file a statement showing the lot upon which the improvements were placed. The contract which was signed by the Milling Company, and which indicated that the condenser was to be placed with the ice-making machinery already installed, was recorded. At the time the trustee took possession of the property, the lien had attached under the terms of the Constitution, and no person had become a mortgagee of the ice company, or a creditor of the company, with rights arising out of a failure to record an instrument creating a lien. The status of the York Company as a creditor secured by a lien was not changed by the appointment of the trustee. After the appointment, for the balance of the four months succeeding the accrual of the debt, the York Company had the right to comply with the statute, and thereby give notice to all persons who might otherwise part with value to the bankrupt or become a creditor of a class entitled to peculiar consideration. The only purpose of such a compliance with the statute by the recording of the

contract and the statement with regard to the building and land involved would have been to give notice. This end could be just as effectually accomplished by actual notice as by filing the contract. Even in those cases in which, under the terms of the Texas statute, a mortgage of land or personal property is void as to innocent purchasers for value or lien creditors, the protection is not extended where actual notice of the prior unrecorded instrument exists. Whatever peculiar standing the trustee may have is by virtue of the terms of the Bankruptcy Act. He has exactly the same standing as an attaching or other lien creditor, and no more. If such a creditor, there being no bankruptcy proceedings, had on the 5th day of April, 1916 (the day on which the adjudication was had), acquired his lien, it would have been a lien subject to be defeated, either by the record of the contract in accordance with article 5627, or by the materialman's giving actual notice of his lien. Constructive notice could have no greater dignity, either as to the lien creditor or the trustee, than actual notice. It is to be kept in mind that the constitutional lien is not created by compliance with the articles of the statute cited, and that all that could have been done by compliance with the statute would have been to give notice.

The conclusion which has been reached accords with abstract equity. But for the sale and installation a few days before the bankruptcy, the trustee would have had no estate to administer, except the plant as it existed prior to the purchase from appellee. This addition to its value was made at the expense of the claimant. The property was not paid for, and no other creditor can reasonably or equitably complain if the property sold is first subjected to the lien of the unpaid seller.

The property has been in the possession of and used by appellant since the sale. The court below may find it necessary to modify the judgment to meet the resulting conditions. With this saving the judgment is affirmed.

WALKER, Circuit Judge (dissenting). In the opinion of the writer the allegations of the petition asserting the claim made by the appellee and the evidence offered in support of those allegations do not show the existence of a state of facts giving rise to the lien provided for by the section of the Constitution of Texas which is set out in the foregoing opinion. That section provides for mechanics, artisans, and materialmen having a lien upon "the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor." The subject of the lien given by that section is "the buildings and articles made or repaired by" a mechanic, artisan or materialman. It is not made to appear that that upon which a lien was claimed and allowed was a building or article made or repaired by the appellee. So far as the writer is advised, no authoritative ruling has been made which indicates that the liberality of construction which has been applied in giving effect to that provision goes so far as to make it permissible to accord to that provision the effect of giving a lien to a materialman not having the relation to the subject of the claimed lien which that provision requires to exist to entitle him to a lien. It seems to the writer that the statute must be relied upon as support for the claim made. If either of the quoted statutory provisions

entitled the appellee to acquire a lien, it was incumbent upon it to pursue the applicable method which the statute requires to be observed to fix a lien. Keating Implement & Machine Co. v. Marshall Electric Light & Power Co., 74 Tex. 605, 12 S. W. 489; Berry v. McAdams, 93 Tex. 431, 55 S. W. 1112.

The written contract between the appellee and the bankrupt was filed and recorded pursuant to the provision of the above-quoted article 5622. The contract as filed and recorded was not accompanied by the description of any house, building, or improvement, or of any lot or tract of land, pursuant to the provision of article 5626 of the Texas statutes. What was put on record did not give any information as to the location of the machinery on which a lien was claimed. It disclosed only the sale of itemized parts or pieces of machinery f. o. b. York, Pa., at a stated price, part of which was payable in cash on arrival of the material, and the balance in two installments payable thereafter.

An obvious purpose of such provisions as the one last mentioned is to enable any one having dealings with reference to property which may be subjected to liens to acquire from a public record definite information of the presence or absence of a statutory lien on that property. The record of a written contract for the furnishing of specified machinery or material, unaccompanied by a description of the structure in which the machinery or material was installed or used or a statement of the location of that structure, hardly could be regarded as a disclosure of such information. The above-quoted article 5626 evidences a legislative determination of what is required for the identification of the property on which a lien is sought to be established. What the appellee filed for record did not furnish that identification. It cannot be said that one searching the record could have learned therefrom that the appellee was claiming a lien on the particular property on which a lien in its favor was adjudged by the decree under review. The failure to have the recorded contract accompanied by a statement of the data mentioned in article 5626 was a failure to comply with a requirement which is made a prerequisite to the acquisition of the lien claimed. Whitney-Central Trust & Savings Bank v. Luck, 231 Fed. 431, 145 C. C. A. 425. The conclusion of the writer is that because of that failure or omission the appellee was not entitled to the lien it claimed.