**MOORE et al. v. CAREY BROS. OIL CO. et al.   (No. 446–3939.)**

(Commission of Appeals of Texas, Section B. Feb. 18, 1925.)

**1. Mines and minerals ⟳74—Oil well casings held not to pass with sale of lease of oil and gas.**

The lessee of an oil and gas lease acquires no fee in soil, and hence whether casings be considered as fixtures or as personalty, the sale of an oil and gas lease does not pass title to casings to purchaser.

**2. Mines and minerals ⟳112(3) — Oil well casings held "buildings and articles made," and a lien for material furnished therefor is a constitutional lien.**

Oil well casings, when put together and cemented in place, are "buildings and articles made" within Const. art. 16, § 37, giving materialmen's lien upon buildings and articles made, and hence a lien for casing or tubing furnished for oil well is a constitutional lien.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Building (In Lien Laws).]

**3. Mines and minerals ⟳115—Lien for material furnished for oil well casings being a constitutional lien, it is not lost by failure to record contract or bill of particulars.**

A lien for material furnished for oil well casings being a constitutional lien, under Const. art. 16, § 37, it does not depend upon statute, and a lien thus acquired is not lost as between parties by failure to record contract or bill of particulars as required by statute.

**4. Trover and conversion ⟳10—Sale depriving lienholder of interest in property constitutes conversion.**

The sale of oil well casing by purchaser of oil and gas lease, who acquired no title to casings by purchase, was wrongful, and constituted a conversion as to persons having lien on such casing.

**5. Trover and conversion ⟳42—Lienholder entitled to recover from purchaser value of security lost.**

Where purchaser of oil and gas lease wrongfully sold and converted oil well casings to which he had no title, thus depriving one having lien on casings of right to foreclosure and sale of security for satisfaction of his debt, lienholder is entitled to sue purchaser and recover amount of debt not exceeding value of security lost.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by the Carey Bros. Oil Company and others against W. M. Moore and others. Judgment for plaintiffs was affirmed by Court of Civil Appeals (246 S. W. 1083; 248 S. W. 470), and defendants apply for writ of error. Affirmed.

W. B. Chauncey, of Wichita Falls, for plaintiffs in error.

Arch Dawson and Guy Rogers, both of Wichita Falls, for defendants in error.

HAMILTON, J.  Carey Bros. Oil Company, a partnership composed of E. S., C. W., and R. K. Carey, J. J. Moran, Guy Rogers, J. E. Childers, E. H. Breedlove, T. T. Reece, Henry Patterson, W. P. Boline, and J. P. Stokes, brought suit on September 10, 1920, against the Oklahoma-Texas Petroleum Company, a corporation, for a balance of $1,800 alleged to be due on 1,700 feet of well casing sold by the partnership to the corporation. The Oklahoma-Texas Petroleum Company placed this casing in a well, a dry hole, on an oil and gas lease in Wichita county, Tex. This lease was sold to W. M. Moore and J. P. McKinney on September 7, 1920, by the trustee, in a deed of trust executed by the Oklahoma Petroleum Company, before the casing was bought, to secure the payment of the purchase price of the lease. Moore and McKinney duly filed for record on September 8, 1920, the deed and assignment conveying to them the lease. Moore and McKinney did not know at the time of the purchase of the lease under the trustee's sale that the petroleum company owed anything on the casing to defendants in error. On September 10, 1920, Carey Bros. Oil Company filed in the office of the county clerk of Wichita county an affidavit and account showing a balance of $1,550 due on the indebtedness attempting to fix a lien on the leasehold estate, sold under the deed of trust, and on the casing also. Defendants in error filed an amended petition in September or October, 1920, subsequent to September 10, 1920, converting the suit into one for foreclosure, and Moore and McKinney were made parties. Moore and McKinney, without the knowledge or consent of defendants in error, drew the casing out of the well in which it had been placed by the petroleum company, and sold it to "some party now unknown." The second amended petition on which the case was tried alleged that Moore and McKinney had converted the casing.

The trial was without a jury. The court rendered judgment for defendants in error against the Oklahoma-Texas Petroleum Company and W. M. Moore and J. P. McKinney, jointly and severally, for $1,550 with legal interest and costs. Moore and McKinney appealed to the Court of Civil Appeals. That court affirmed the judgment of the trial court. 246 S. W. 1083.

---

⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The case was brought to the Supreme Court on application for writ of error by Moore and McKinney. The third assignment of error presents the question of whether the casing in the well passed by the sale of the lease under the deed of trust to Moore and McKinney, and therefore whether the judgment against them for conversion, the ground on which it was rendered, can be sustained. The trial court found:

"That the casing was not used in such manner as to become a part of the realty, but that such remained as personal property from the time it was sold by the plaintiff to the petroleum company."

The statement of facts does not reveal the terms of the oil and gas lease under which the Oklahoma-Texas Petroleum Company held, and which was sold, as shown above, to Moore and McKinney. No contract that the casing should not be removed from the well is shown. The theory of plaintiffs in error is that the casing became a fixture when placed in the well, and thereby became a part of the realty, and as such passed to them by the sale under the deed of trust.

[1] While an oil and gas lease, with the right of ingress and egress to explore for, discover, develop, and remove oil and gas, conveys an interest in real estate, it does not convey a greater interest in the soil, except the oil and gas, then to enable the owner of the lease to use the soil in carrying out and availing the leases of the above-named rights. The fee in the soil, except the oil and gas, remains in the lessor incumbered by those rights of the lessee. The lessee is not the owner of the solids of the earth in which the casing is imbedded. He, at most, is the owner of the oil and gas in place, and merely has the right to use the solid portion so far as necessary to bore for, discover, and bring to the surface the oil and gas. If the casing were a part of the realty, it would not belong to the lessee but to the lessor, with the same right in the lessee to use it as he has to use the other portions of the solid realty only. Therefore, whether the casing became a fixture—and it could not become a fixture in the legal sense without becoming a part of the realty—or not, it did not pass with the sale of the lease or interest to Moore and McKinney. No part of the realty passed by that sale except the oil and gas and the right to use the soil in discovering, developing, and bringing to the surface such oil and gas as might be found in the land in the period of the lease. If the casing of an oil well becomes a fixture, a part of the soil, when placed in the well, then every lessee who might put down a well on leased ground would lose title to the casing he puts into it. It would become the property of the lessor unless the contract specially provided otherwise. This ought not to be

and is not the law. Thornton's Law of Oil and Gas (3d Ed.) § 653, says:

"The lessee of land to bore for oil, who does not find any oil has a right to remove not only the machinery used in sinking the well, but also the casings in the wells, unless there be a contract to the contrary concerning their removal."

This view is thoroughly sustained by the following decisions: Siler v. Globe Window Glass Co., 21 Ohio Cir. Ct. R. 284, 11 O. C. D. 784; see especially, Robinson v. Harrison, 237 Pa. 613, 85 A. 879, the Supreme Court of Pennsylvania.

The casing did not pass by the sale under the deed of trust to Moore and McKinney, and therefore remained the property of the Oklahoma-Texas Petroleum Company, to whom defendants in error sold it.

[2] Plaintiffs in error contend that:

"The description of the casing and real estate, as set out in the affidavit filed by the appellees in the mechanic's lien records, was insufficient to put appellants upon notice that appellees were asserting any lien against said casing, land, and leasehold estate, and does not meet the requirements of the statute with reference to fixing liens."

Their proposition is that:

"In order for an affidavit to be sufficient under the statute to fix a materialman's lien the affidavit must describe the personal property and improvements, and also describe the real estate on which same is located."

No other complaint as to the statutory fixing of the lien is made. The mechanic and materialman's lien is given by the Constitution. Article 16, § 37, thereof, provides:

"Mechanics, artisans and materialmen, of every class, shall have a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

It is observed that the lien given by the Constitution is "upon the buildings and articles made or repaired * * * for the value of their labor done thereon, or material furnished therefor." Is an oil well casing within the class of "buildings and articles made"? That it is seems to us clear and without any doubt whatever. Casing or tubing indiscriminately is not within the class. Neither is casing or tubing indiscriminately an oil well casing. Not until such casing is constructed or made into an oil well casing is it an article made. As it is hauled out or as it lies in piles around the well it is not an article made. But even then it is "material furnished therefor," if it was sold or furnished for the purpose of making of it an oil well casing. Such casing or tubing must be put together and cemented in place in such manner as to keep out gas, oil, and

water, and to prevent cave-ins before an oil well casing exists. In other words, an oil well casing must be made or constructed of such casing or tubing, together with cement and other articles, before it is an article made. To do this, such material must be used in a definite and scientific manner, just as much so as bricks must be arranged in definite forms to construct of them a house. When it is put together it is an article made just as definitely and certainly as an oil well tower constructed of lumber is an article made. In the one case, the casing or tubing is material furnished for an article made just as clearly and certainly as in the other case lumber is material furnished for an article made.

The authorities sustain this view. Thornton's "Law of Oil and Gas," in discussing Mechanic's Lien, vol. 1, § 372, p. 537, says one furnishing pipe for an oil well is entitled to a lien. The statute of Indiana provides:

"All persons performing labor or furnishing material or machinery for erecting, altering, repairing, or removing any house, mill, manufactory, or other building, bridge, reservoir, system of water works, or other structure, may have a lien," etc.

In Haskell et al. v. Gallagher et al., 20 Ind. App. 224, 50 N. E. 485, 67 Am. St. Rep. 250, the court said:

"In McElwaine v. Hosey, 135 Ind. 481, 492, it was said that the boiler, engine, shafting, beam, derrick, reel, ropes, and drill, when put in place and action, in drilling a gas well, constitute, not a mill, but a structure within the meaning of the statute above mentioned. If such appliances for making a gas well be a structure, it would seem that a completed oil well with all its appliances, including the drilled hole in the earth, with its tubing, should also be regarded as within the meaning to which the language of the statute may legitimately be expanded in its application by the courts."

In Central Trust Co. of New York v. Sheffield & Birmingham Coal, Iron & Railway Co. (C. C.) 42 F. 106, 9 L. R. A. 67, Judge Pardee held that "a coal mine is an improvement on land, within the meaning of Code Ala. * * * giving a lien to every mechanic or other person doing work or furnishing material, fixtures, or machinery 'for any building or improvement on land.'"

In Reeves v. York Engineering & Supply Co., 249 F. 513, 161 C. C. A. 439, Judge Batts said:

"The courts of Texas hold that a lien is created by the Constitution of the state in favor of 'materialmen of every class' upon 'the buildings and articles made or repaired,' for 'material furnished therefor.' The existence of this lien is not dependent upon any action taken under the terms of the statute. Bassett v. Mills, 89 Tex. 167, 34 S. W. 93; Strang v. Pray, 89 Tex. 525, 35 S. W. 1054; National Bank v. Taylor, 91 Tex. 78, 40 S. W. 876,

966; De Bruin v. Land & Irrigation Co. (Tex. Civ. App.) 194 S. W. 655. If the terms of the Constitution are applicable to the instant case, all the objections of appellant are lacking in merit.

" 'This provision (of the Constitution),' says the court in Bassett v. Mills, supra, 'in so far as it gives a lien, is as broad as language can make it.' In Strang v. Pray, supra, the Supreme Court of Texas uses this language: 'It was the intention of the members of the convention which framed and adopted this section of the Constitution to give full and ample security to all mechanics, artisans, and materialmen for labor performed and material furnished for the erection of all buildings and other improvements, and the courts must give such construction to this language as will carry out that intention.'

"From this language and the decisions examined, it is apparent that the Texas courts give a liberal construction to the provision of the Constitution, in an effort to give effect to its manifest intent. It would have been difficult for the Constitution makers to have used a more comprehensive word than 'material,' and protection is given 'materialmen of every class.' The words 'buildings and articles made or repaired' are also very comprehensive.

"It is contended that, if it should be held that a lien exists in this case, it would be necessary to make a like holding in every instance where machinery was sold by a manufacturer to a dealer, or by a dealer to an individual. Neither proposition is sound. It is easily to be conceived that a lien would follow a sale in one case, when the sale would not have that effect in another. The usual effect of a sale of a piece of machinery is the same as the ordinary effect of the sale of lumber or other material that goes into the construction of a house. If the sale is in the course of business, and without reference to any particular improvement, no lien results, unless it is specifically retained. If, however, the material is sold with regard to the making of a certain improvement, no reason is seen why the constitutional rule should not apply. It is not always the case when gas fixtures are sold, or a cooking range is sold, or engines and boilers are sold, that a lien upon the property so sold, or upon any other property on which it is to be placed, results. But if the material is bought with the purpose of incorporating it into a building or improvements, the terms of the Constitution would seem to apply. The Constitution gives the lien to 'materialmen of every class.' The lien is given 'upon the buildings and articles made or repaired.' The language is broad and the purpose is clear. There is nothing to indicate that merely raw material is intended to be included within its terms. Certainly, some classes of manufactured products would always be so included. For instance, no one would think of undertaking to maintain that nails and screws, locks, doors, and windows were not within the terms of the Constitution. No reason is made sufficiently to appear why such machinery as was furnished in the instant case, capable of incorporation into and made a part of the plant and furnished for that purpose, should not be held to be included."

An oil well casing coming within the class of "buildings and articles made," for which the Constitution gives to him who furnishes material therefor a lien, the lien in this case is a constitutional lien.

[3] The lien does not depend upon the statute. The Legislature has no power to affix to that lien conditions of forfeiture. The Legislature is commanded by the Constitution simply to provide for the "speedy and efficient enforcement" of the lien. No record at any time is necessary to give the lien. The filing and recording of the contract or account, as provided by the statute, is not necessary in any case arising between the original contractor and the original owner. The provisions of the statute requiring the claim to be recorded were intended to protect the persons having the liens against subsequent purchasers, mortgagees, and lienholders in good faith without notice, by furnishing constructive notice of the existence of the lien. Farmers' & Mechanics' National Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, 966; Strang v. Pray, 89 Tex. 525, 35 S. W. 1054; Keating Implement & Machine Co. v. Marshall Electric Light & Power Co., 74 Tex. 605, 12 S. W. 489.

Since the casing did not pass to Moore and McKinney by the sale under the deed of trust, the lien and its enforcement was a matter between the original contracting parties and the lien attached under the Constitution, and would not have been lost by a failure to record the contract or bill of particulars as required by the statute. Therefore, it is unnecessary to pass on the question raised by the assignments as to the sufficiency in any particular of the account filed. It would have made no difference if none had been filed. Defendants in error had a lien on the casing.

[4, 5] The sale of the casing by plaintiffs in error was wrongful. They did not own it. A wrongful sale of goods whereby a person who has a part interest therein, or a lien thereon, is deprived of the same, is a conversion whether the wrongdoer be an owner of another part or a lienholder. 38 Cyc., 2028. It is well settled that a lienholder may sue for a conversion of the property on which the lien exists. Plaintiffs in error deprived defendants in error of their right to a foreclosure and sale of the security for the satisfaction of their debt, and they are entitled to recover compensation of plaintiffs in error measured by the amount of the debt provided it does not exceed the value of the security lost. Focke, Wilkens & Lange et al. v. Blum, 82 Tex. 436, 17 S. W. 770; Zapp v. Johnson, 87 Tex. 641, 30 S. W. 861; Boydston v. Morris, 71 Tex. 697, 10 S. W. 331; Scaling v. First National Bank of Wichita Falls, 39 Tex. Civ. App. 154, 87 S. W. 715; Mogul Producing & Refining Co. v. Southern

Engine & Pump Co. (Tex. Civ. App.) 244 S. W. 212.

We recommend that the judgment of the trial court and Court of Civil Appeals be affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.