WHITNEY–CENTRAL TRUST & SAVINGS BANK v. LUCK et al.

(Circuit Court of Appeals, Fifth Circuit. March 13, 1916. Rehearing Denied April 19, 1916.)

No. 2855.

1. MECHANICS' LIENS ⬤═136(1)—RECORDING—LOUISIANA STATUTE.

Civ. Code La. art. 3249, gives a lien or privilege to contractors, laborers, etc., upon "the building, improvement or other work erected," and upon the lot of ground upon which it stands, not exceeding one acre. Articles 3272 and 3274 provide for the recording of such privileges "in the manner required by law in the parish where the property to be affected is situated," and that "a privilege shall confer no preference on the creditor who holds it over creditors who have acquired a mortgage," unless so recorded. Article 3348, relating to the recording of mortgages, provides that "in all cases of special privileges the property subject to such privileges must also be described." *Held*, that the latter article applies to a mechanic's lien or privilege given by article 3249, which is a special privilege, and that the recording by a contractor of the contract under which he performed work on a building, which contained no description of the building or ground, was insufficient to give him a privilege as against a prior mortgagee.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 213; Dec. Dig. ⬤═136(1).]

2. LIENS ⬤═11—LOUISIANA STATUTES—"GENERAL PRIVILEGE"—"SPECIAL PRIVILEGE."

Under the Civil Code of Louisiana, as construed by the state courts, a "special privilege" may exist as to immovables as well as to movables; the difference between a general and a special privilege being that the former affects all of the debtor's property of the class to which it relates, while the latter is limited to particular property.

[Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 2, 3; Dec. Dig. ⬤═11.]

3. FIXTURES ⬤═20—BETWEEN MORTGAGEE AND SELLER—LIEN FOR PURCHASE PRICE—LOUISIANA STATUTE.

Under Civ. Code La. art. 3227, which provides that "he who has sold any movable property, which is not paid for, has a preference on the price of his property over other creditors of the purchaser * * * if the property still remains in the possession of the purchaser," such privilege continues to exist, although the thing sold has been incorporated into a build-

ing or other immovable, if it can be detached or removed without injury to the soil or structure.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 44–46; Dec. Dig. ☞20.]

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in equity by the Erie City Iron Works against the Cecilia Sugar Company, Limited; the Whitney-Central Trust & Savings Bank, as trustee, and William P. Luck and others, as interveners. From a decree giving preference to the claims of Luck and others, the Trust & Savings Bank appeals. Reversed in part.

Charles F. Borah, of New Orleans, La. (Borah, Himel, Bloch & Borah, of Franklin, on the brief), for appellant.

Nelson S. Wooddy, James E. Zunts, R. E. Milling, Solomon Wolff, D. B. H. Chaffe, and Andrew M. Buchmann, all of New Orleans, for appellees.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. Under a bill filed by the Erie City Iron Works, claiming to be entitled to a lien or privilege on property of the Cecilia Sugar Company, Limited, a receiver of the property of the latter company was appointed. The Whitney-Central Trust & Savings Bank, claiming as trustee under a mortgage or deed of trust made by the Sugar Company, and other parties who claimed to have liens or privileges on the property of that company, intervened in that suit and asserted their claims therein. Appeals from decrees in favor of several of the interveners, namely, W. P. Luck, the Wilmot Machinery Company, Alex Dussel Iron Works, Koretke Brass & Manufacturing Company, and the Boland Machine & Manufacturing Company, were submitted together. The several interventions will be considered separately, except where in two or more of them the same questions are presented.

### Intervention of W. P. Luck.

[1] W. P. Luck claimed that there was a balance due him under a written contract with the Cecilia Sugar Company, Limited, for work on its sugar house, and that for that amount he was entitled to a privilege on that structure and the acre of land upon which it is situated. The privilege claimed is one provided for by article 3249 of the Civil Code of Louisiana, which, being part of a chapter entitled "Of Privileges on Immovables," provides that:

" * * * Contractors, subcontractors, * * * laborers, cartmen and other workmen employed in constructing, rebuilding or repairing houses, buildings, or making other works * * * shall have a lien and privilege upon the building, improvement or other work erected, and upon the lot of ground not exceeding one acre, upon which the building, improvement or other work shall be erected."

Another chapter of the same Code, entitled "How Privileges are Preserved and Recorded," contains the following provisions:

"Art. 3272. Architects, * * * contractors, subcontractors, * * * laborers, cartmen, masons and other workmen employed in constructing, rebuilding or repairing houses, buildings, or making other works; * * * preserve their privileges, only in so far as they have recorded, with the recorder of mortgages in the parish where the property is situated, the act containing the bargains they have made, or a detailed statement of the amount due, attested under the oath of the party doing or having the work done, or acknowledgment of what is due to them by the debtor."

"Art. 3274. No privilege shall have effect against third persons, unless recorded in the manner required by law in the parish where the property to be affected is situated. It shall confer no preference on the creditor who holds it, over creditors who have acquired a mortgage, unless the act or other evidence of the debt is recorded within seven days from the date of the act or obligation of indebtedness, when the registry is required to be made in the parish where the act was passed or the indebtedness originated and within fifteen days if the registry is required to be made in any other parish of this State."

In the same Code, under the heading "Of the Mode and Effect of Recording Mortgages," is found the following:

"Art. 3348. Any person entitled to a mortgage or privilege on the property of another person, must cause the evidence of such mortgage or privilege to be recorded in the mortgage book of the parish where the property is situated. * * * In all cases of special privileges the property subject to such privileges must also be described."

It was disclosed by the evidence that the mortgage or deed of trust to the Whitney-Central Trust & Savings Bank, which was made on June 1, 1912, and which embraced the tract of land, containing 15.73 arpents, more or less, in the parish of St. Martin, on which the Cecilia Sugar Company's sugar house was located, was recorded in the Book of Mortgages of that parish on June 3, 1912, and that on July 1, 1912, the following instrument was recorded in the same book:

"William P. Luck, Southern Representative.

"Office 308 Godchaux Bldg.

"New Orleans, La., June 15, 1912.

"The Cecilia Sugar Co., Ltd., New Orleans, La.—Gentlemen: With reference to one lot of steel tanks, to be furnished your company by the Erie City Iron Works under another contract, and upon delivery of the above-mentioned material, amounting to approximately 220,000 pounds, to Cecilia, La., I propose to furnish all the necessary skilled and common labor to unload same from the cars and erect the different tanks upon foundations furnished and located by you; upon erection the tanks will be tested and made tight, you supplying the water for testing and also furnishing such scaffolding as is on the place. The price for all of the above work, including freight paid by you, to be thirty-three hundred dollars ($3,300.00), payable as follows:

"You are to pay the freight on all material from New Orleans to Cecilia, La., and in addition thereto you are to pay me weekly in cash, sufficient amounts for the weekly pay rolls, these pay rolls to be furnished and approved by my representative in charge of the work. These several pay rolls and freights are not to exceed the amount of this contract. On completion of the erection of the various tanks, you are to pay me in cash such balance as may remain between the cash paid by you and the amount of the contract price. You are to furnish suitable board and lodging for such men as I employ for the erection of the tanks, for which I agree to pay you the sum of fifty cents (50 cts.) per day per man on vouchers approved by my representative, to be deducted from such balance as above stated.

231 F.—28

"I further agree to commence erection on the arrival of the first cars of material and furnish ample force for the erection so that the various tanks will be ready for use on or before October 15, 1912, providing I am not delayed by circumstances beyond my control.          · [Signed]   Wm. P. Luck.

"Accepted this 25th day of June, 1912.

"The Cecilia Sugar Co., Ltd.,

"By I. Hechinger, Pr."

Nothing else that referred to Luck's contract or claim was recorded in that book. Nothing contained in the recorded contract between Luck and the Cecilia Sugar Company, Limited, furnishes any support for the contention that that instrument describes the property upon which a lien or privilege in favor of Luck is claimed. That instrument does not even mention the kind or locality of the structure upon which the work contracted for was to be done. If the provision of article 3348 of the Code that "in all cases of special privileges the property subject to such privileges must be described" is applicable, it is apparent that that was not done with reference to the claim of Luck, which by article 3274 of the Code is required to confer a preference over a creditor who had acquired a mortgage.

[2] But it is contended that that provision is not applicable. This contention is sought to be supported by the suggestion that special privileges on immovables are unknown to the laws of Louisiana. The provision of article 3190 of the Code that "privileges are either general or special on certain movables" has been referred to in argument as the only recognition found in the Code of a distinction between general and special privileges, and as having the effect of making the distinction or classification inapplicable to privileges on immovables. The untenableness of this proposition is apparent in view of the express mention made in article 3269 of the Code of "special privileges which exist on immovables." While the words "general" and "special," as used with reference to privileges, are not defined by the Code, they, like many other terms made use of, but not defined therein, have a well-settled meaning and from an early date have figured in the legal parlance of Louisiana. A general privilege affects all the debtor's movables or immovables, according as it is given on the one or the other kind of property; while a special privilege subjects particular property, which may be either movable or immovable. 3 Hennen's Digest, pp. 1239, 1241, 1244.

That the record of the contract between Luck and the Cecilia Sugar Company, unaccompanied as it was by any description of the immovable upon which he claims a privilege, did not amount to what was required to confer on him a preference over the Whitney-Central Trust & Savings Bank, which previously had acquired a mortgage on the same immovable, we think is made plain by statutory provisions above quoted, which have been authoritatively interpreted. Shreveport National Bank v. Maples, 119 La. 42, 43 South. 905; Hibernia Bank & Trust Co. v. C. F. Knoll Planting & Mfg. Co., 133 La. 698, 63 South. 288; Carlin v. Gordy, 32 La. Ann. 1285. It is not made to appear that a result of the requirement that the property sought to be subjected to a privilege be described was to put it beyond the power of Luck to do what was required to give him a preference. The statutes

make provision for one situated as he was acquiring "a lien and privilege upon the building, improvement or other work erected, and upon the lot of ground, not exceeding one acre, upon which the building, improvement or other work shall be erected." It is not to be supposed that one who had done, or contracted to do, work on a particular structure, was without means of furnishing a description of that structure which, if recorded, would enable one searching the record to learn therefrom that a privilege on that structure was claimed. What would have been a sufficient description to make the privilege attach, not only to the structure worked upon, but also to a particular acre of ground out of a larger tract upon which the structure was erected, is a question not presented for decision, as there was no pretense of a description of any ground. 27 Cyc. 159, 160.

The conclusion is that the decree in favor of W. P. Luck is not sustainable.

### Other Interventions.

[3] Each of the other decrees appealed from was in favor of a vendor of movable property, who was recognized as having the right conferred by article 3227 of the Civil Code of Louisiana, which provides that:

"He who has sold any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remain in the possession of the purchaser."

The vendor's privilege here provided for continues to exist, though the thing sold has been incorporated into a building or other immovable, if it can be detached or removed without injury to the soil or structure. In re Receivership of Augusta Sugar Co., 134 La. 971, 64 South. 870; Pratt Engineering & Machine Co. v. Cecilia Sugar Co., Limited, 135 La. 179, 65 South. 100; Walburn-Swenson Co. v. Darrell, 49 La. Ann. 1044, 22 South. 310.

The principal contentions in behalf of the appellant are that the things sold had been so incorporated in the sugar house that they were not detachable without injury to the structure, or that they were mere materials for the price of which a materialman's lien on the structure, and not a vendor's lien or privilege on the thing sold, was claimable. We are not of opinion that either of these contentions is supported by the record. The evidence warranted the findings that the things sold were detachable without injury to the building or the soil, and that in each instance what was sold was not mere material, but was a device or machine; the fact that in some instances the vendor's statement of his claim for the price of what was sold showed the parts as separate items not preventing one familiar with sugar house machinery from recognizing the whole as constituting a separate or separable device or machine "knocked down."

From the conclusions above stated, it follows that the decree in favor of W. P. Luck should be reversed, and that the other decrees appealed from should be affirmed; and it is so ordered.