MILLER et al. v. C. C. HARTWELL CO., Limited, et al.

In re COLLINS.

(Circuit Court of Appeals, Fifth Circuit. April 28, 1917.)

No. 3025.

1. FRAUDULENT CONVEYANCES ⊚⇒26(1)—MORTGAGES—VALIDITY OF TRANSACTION.

An owner of lots, on which he was building houses, to induce D. to make a loan thereon, made an apparent conveyance to an ostensible purchaser, taking back notes secured by a vendor's lien and mortgage, and executing to the ostensible purchaser a building contractor's bond for the protection of laborers and materialmen, such as was required by the state law. The notes were then transferred to D., who had declined to make the loan unless the contractor's bond was given, and who then made advances to the real owner. No other motive than to create a situation in which such bond could be given appeared. There was no attempt to conceal the real nature of the transaction, and laborers and materialmen were in no way prejudiced. Held, that there was no such simulation or fraudulent design or arrangement as invalidated the mortgage, and it was enforceable for the amount of the advances thereunder.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 61, 64, 65.]

2. MORTGAGES ⊚⇒298(2)—CLAIMS—PAYMENT—PERSONS ENTITLED.

Where mortgage notes were payable to the order of their maker and indorsed by him in blank, so that they were transferable by delivery, a transferee for collection was entitled to receive payment in bankruptcy,

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

where those beneficially interested acquiesced in her assertion of such right.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 837–839, 864.]

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

In the matter of John D. Collins, bankrupt. From a decree (235 Fed. 937) disallowing the claim of Mrs. Isabel Danziger Miller and others, opposed by the C. C. Hartwell Company, Limited, and others, claimants appeal. Reversed and remanded.

Chas. Payne Fenner and A. D. Danziger, both of New Orleans, La. (Howe, Fenner, Spencer & Cocke, of New Orleans, La., on the brief), for appellants. William Grant and Wm. B. Grant, both of New Orleans, La., for appellees.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge. This is an appeal from a decree which disallowed a claim presented by the appellant Mrs. Isabel Danziger Miller against the proceeds of the sale of three lots in the city of New Orleans which belonged to the bankrupt, John D. Collins, and were sold under the order of the court in the bankruptcy proceeding. The appellant's claim was evidenced by three notes held by her, for $2,200 each, with interest from their date, made by I. Singer, payable to his own order, and by him indorsed in blank, and which purported to be secured by a vendor's lien and mortgage on the lots above mentioned. The claim presented showed that the notes were to be credited with the sum of $3,117.20.

[1] The notes mentioned and the instrument which purported to secure them came into existence under circumstances now to be stated. Prior to February 26, 1912, Collins, the bankrupt, bought the three lots mentioned from one Pailet for $3,100, paying $400 cash and giving his note, secured by vendor's lien and mortgage, for $2,700, and started to build several houses on the lots; this work having progressed so far that the houses were nearing completion on February 26, 1912. The $2,700 note had been acquired by Felix J. Dreyfous as collateral security for a loan of $1,500. Shortly prior to February 26th Collins applied to Dreyfous for a loan, which he proposed to secure by mortgaging the three lots mentioned, and made it known that the loan was desired to enable him to pay for labor and material furnished or to be furnished for the houses on the lots proposed to be mortgaged. The result of this application was that Dreyfous consented to make a loan for $6,600, part of which amount was to be used to satisfy the existing mortgage and vendor's lien on the property for $2,700 and interest, but demanded that a bond be made pursuant to the Louisiana statute of 1906 (Acts La. 1906, p. 223), which provides for a contractor giving to an owner a bond with security for the faithful performance of the contract and the payment by the contractor of amounts owing for labor and material furnished for the work contracted for. A surety company was found which was willing to go on the bond required, but it was concluded that such bond could not be given in the circumstances then existing, as Collins, the owner of the lots, was also the

builder of the houses in course of erection, there being no contractor to make the bond. The agent of the surety company suggested that the law could be complied with and a bond given in pursuance of it by Collins conveying the lots to a third person, and entering into a building contract with that person and himself making a contractor's bond with surety. Pursuant to this suggestion Collins conveyed the lots to I. Singer, the deed reciting a consideration of $7,500, that the purchaser had paid $900 of that consideration in cash, and for the remainder, $6,600, executed the three notes here in question, secured by a vendor's lien and mortgage, and a building contract and a bond in conformity with the requirement of the statute were executed by Singer as owner and Collins as contractor, the surety company signing as the latter's surety for the amount of the bond, $6,600. This having been done, the $6,600 of notes signed and indorsed by Singer were delivered to Dreyfous, who paid the previously existing $2,700 debt and procured the cancellation of the liens securing it, and made some payments to and for Collins, the total amount of which is not clearly and satisfactorily disclosed by the evidence. It was, however, clearly made to appear that more than $3,300 in amount of the $6,600 loan so arranged and provided for was actually paid or furnished, and that what the appellant claimed to be secured by the lien or privilege asserted was the amount actually paid on the security of the $6,600 notes and mortgage with interest on that amount. It appears from the testimony of Dreyfous that he discontinued payments to Collins because of the assertion by parties who had furnished labor and material to Collins for the houses he was building of liens or privileges on the property covered by the mortgage.

It is not made to appear that there was any other motive in the transaction between Collins and Singer than to create a situation in which a bond could be given pursuant to the Louisiana statute above referred to. So far as appears there was no attempt to conceal the real nature and purpose of the transaction. At no time did Singer claim that he had really bought the property and was the owner of it. There was filed in the bankruptcy proceeding a formal statement by him to the effect that the lots were placed in his name for convenience only and that they were the property of Collins, the bankrupt. It is not disclosed that any one asserting an interest in the property was misled to his prejudice by a belief that at any time Singer was the real owner of it. What was done did not have the effect of impairing any existing security held by a furnisher of labor or material, or prevent the acquisition of a lien or privilege for amounts so owing by a compliance with the requirements of the statutes which make provision for such security. The giving of the bond was a distinct benefit to those who subsequently furnished labor or material for the buildings then in course of erection. The statute itself in pursuance of which that bond was given states its purpose to be "to require owners to secure bond with solvent and sufficient surety from the undertaker, contractor, master mechanic or engineer for the protection of all parties interested in the contract, as their interest may appear, and which said surety is to stand in the place and stead of a defaulting undertaker, contractor, master mechanic or engineer." The condition of the bond which the

statute prescribes is "the true and faithful performance of the contract, and the payment of all subcontractors, workmen, laborers, mechanics, and furnishers of material by the undertaker, contractor, master mechanic, or engineer," and it is provided that such bond be made "in favor of the owner, subcontractors, workmen, laborers, mechanics, and furnishers of material jointly, as their interests may appear."

It is obvious that, while such a bond is required for the protection of others, the existence of it inures also to the benefit of a mortgagee of the land upon which the building or improvement contracted for is erected, in that it provides a means of bringing about the satisfaction of claims of laborers and materialmen against the contractor which does not involve an impairment of the mortgagee's security by the creation of liens or privileges which, in the absence of such a bond, would have precedence over that of the mortgage. The necessity of laborers and materialmen subjecting the mortgaged property to the satisfaction of their demands was obviated by providing for them other adequate security, leaving no occasion for a resort by them to the mortgaged property. What was done did not harm those who previously had furnished labor or material, whether they had or had not already let the time slip by within which they could acquire a lien or privilege by complying with statutory requirements. Those who had waited too long had already lost the opportunity of fixing a lien or charge in their favor on the mortgaged property. Those who had not still could do so by complying with the prescribed statutory requirements. The bond given provided adequate security to those who subsequently furnished labor or material. So the lender, in arranging for the bettering of the security he had contracted for, did not lessen the chance of laborers and materialmen to realize in full on their demands.

The most that can be said against the arrangement in the carrying out of which the notes in question and the mortgage securing them came into existence is that on the face of it there was a deceptive appearance of a change of ownership of the property involved having been effected, when in reality the ownership remained as it was before. But it is not made to appear that there was any fraudulent design in the transaction, or that the consummation of it had the effect of defrauding or injuring any one. As to the mortgage feature of the transaction, there was an absence of any concealment or possibility of deception of or damage to parties who were strangers to the transaction. The mortgage and the notes were given to secure an indebtedness actually and in good faith arranged for. More than half of the amount provided for was actually paid or advanced, and only for that amount and interest on it was the claim based on the notes and mortgage sought to be enforced against the proceeds of the sale of the mortgaged property. As to strangers to the transaction, who were presently or prospectively interested in the property covered by the mortgage, it did not have an effect different from that it would have had if it had been given by the real owner, instead of by the apparent owner, in whom the legal title had been vested "for convenience only." The conclusion is that as to the mortgage feature of the transaction there was no such simulation or fraudulent design or arrangement as is entitled to be given the effect of invalidating and rendering unen-

forceable the mortgage incumbrance placed on the property by the apparent owner. Hoffman v. Ackermann, 110 La. 1070, 35 South. 293; Nuss v. Nuss, 112 La. 266, 36 South. 345.

[2] The mortgage notes, which were made payable to the order of the maker of them, having been indorsed in blank by him, were transferable by delivery. They were delivered to the appellant for collection. The only parties entitled to question her right to collect what was owing on them were those who were beneficially interested. As they acquiesced in her assertion of the right to receive what was owing on them, there seems to be no good reason for denying that she had that right.

The conclusion is that under the evidence adduced the appellant had a lien or privilege for the amount actually and in good faith paid or advanced on the security of the mortgage notes held by her, and that the demand she presented was enforceable against the proceeds of the sale of the mortgaged property. As the trial court disallowed the claim of the holder of the mortgage notes, there was no decision on the question of that claim being entitled to priority over or being subordinated to other claims which were asserted against the proceeds of the sale of the property mentioned. The other claims were asserted by parties who furnished labor or materials for the houses built on the mortgaged property. In the situation in which the matter is presented to us it is not deemed appropriate to say more in reference to the question, likely to be presented for decision in the further progress of the case, of the relative rank of the conflicting claims presented than that the Louisiana statutes show when, to what extent, and by a compliance with what requirements those who furnish labor or material for an improvement on real estate acquire a lien or privilege having priority over that of a creditor who has acquired a mortgage. Whitney-Central Trust & Savings Bank v. General Fire Extinguisher Co., 240 Fed. 631, —— C. C. A. ——; Whitney-Central Trust & Savings Bank v. Luck et al., 231 Fed. 431, 145 C. C. A. 425; Hibernia Bank & Trust Co. v. C. F. Knoll Planting & Mfg. Co., 133 La. 698, 63 South. 288; Carolina-Portland Cement Co. v. Southern Wood D. & F. Co., 137 La. 470, 68 South. 831.

The decree appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.