## MILLER et al. v. C. C. HARTWELL CO., Limited, et al.

### In re COLLINS.

(Circuit Court of Appeals, Fifth Circuit. February 14, 1921. Rehearing Denied March 18, 1921.)

#### No. 3614.

**1. Mechanics' liens 313—Priority as against assignee of mechanic's lien.**

Where a building contractor executed a bond with surety for the payment for all labor and material under Acts La. 1906, No. 134, which provides that such bond shall be "for the protection of all parties interested in the contract as their interests may appear and which said surety is to stand in the place and stead of a defaulting undertaker, contractor," etc., such bond inures to the benefit of a mortgagee of the property, and though the mortgagee, by failure to institute proceedings citing lien claimants and the surety in concursus, left such lien claimants with the right to enforce their liens in priority to the mortgage, such priority cannot be asserted by the surety in the bond as to lien claims of which it has become owner.

**2. Costs 266—Award of appeal costs not affected by subsequent appeal.**

A judgment of the appellate court awarding costs of appeal to the prevailing party *held* not affected by the fact that such party was defeated on a subsequent appeal in the same case involving different issues.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

In the matter of one Collins, bankrupt. Mrs. Isabel Danziger Miller and others appeal from an order in favor of C. C. Hartwell Company, Limited, and others. Reversed.

See, also, 241 Fed. 636, 154 C. C. A. 394; 256 Fed. 273, 167 C. C. A. 445.

Walker B. Spencer, Charles P. Fenner, Philip S. Gidiere, Esmond Phelps, and A. D. Danziger, all of New Orleans, La., for appellants.

William B. Grant, of New Orleans, La., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. This is the third appearance of this cause in this court. 241 Fed. 636, 154 C. C. A. 394; 256 Fed. 273, 167 C. C. A. 445. It is a contest between the holders of mechanics' liens and a mortgage for priority in the distribution of the proceeds of certain realty, upon which both attached, and which was sold, in the bankruptcy proceedings, at public outcry, free from all liens or claims, which were transferred to the fund.

The property was owned by Collins, the bankrupt. He was a building contractor, and undertook to build, for himself, six cottages on the property. When the cottages were nearly finished, he found it necessary to borrow money to complete the work, and sought to do so on mortgage of the premises. The proposing lender, in order to prevent any laborers' or mechanics' claims from asserting liens prior to the mortgage offered, required Collins to give a bond as provided by Acts of Louisiana of 1906, No. 134, which provides for a contractor giving

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
271 F.—25

a bond with surety for the faithful performance of the work and the payment for all labor and material furnished on the work contracted for.

The National Surety Company was procured to go on such bond as surety, but as Collins was both owner and contractor it was urged he could not properly take such bond as owner. To obviate this difficulty, at the suggestion of the surety company's agent, Collins conveyed the property to Isadore Singer for an agreed price, receiving in part payment three notes made by Singer, aggregating $6,600, secured by a vendor's lien and mortgage on the property. He entered into a building contract with Singer as owner to complete said houses, and Collins, as principal, and National Surety Company, as surety, gave a bond binding themselves to Singer, as owner, and to all subcontractors, workmen, laborers, mechanics, and furnishers of material as their interest may appear, for the true and faithful performance of said contract, and for the payment of said subcontractors and others, above specified, up to the sum of $6,600, "it being the purpose of this bond to protect all parties interested in said contract, as their interest may appear, the said surety standing in the place of defaulting undertakers, contractors, master mechanics, or engineers, as provided by Act 134 of the General Assembly of the state of Louisiana, approved July 10, 1906."

The notes given by Singer to Collins secured by this mortgage were transferred to one Dreyfous, who advanced the sum of $3,083 thereon. This mortgage debt is now held by the appellant, Mrs. Miller. In the previous steps of this litigation it has been ruled that, while the ostensible sale from Collins to Singer was for no other purpose than to create a situation where the contractor's bond, with surety, could be given, it did not invalidate the mortgage held by Mrs. Miller as transferee, and that it was enforceable for the amount advanced thereon. 241 Fed. 636, 154 C. C. A. 394.

During the further progress of the case the holders of mechanics' and material men's liens were, however, held not to have lost their right to assert such liens in priority to said mortgage, because it was shown that a petition had not been filed in a court of competent jurisdiction, citing all claimants and the surety on the bond for the assertion of all claims in concursus, with the right on the part of claimants to object to the sufficiency of the surety, and that no equivalent proceeding had been filed by the trustee in bankruptcy, and that therefore the right of the lienors to prime the mortgage in the distribution of the proceeds of the sale of the mortgaged property was not cut off by the giving of the bond. So much of the claims of the lienors as represented work and labor furnished after February 26, 1912, were held entitled to priority, and the case remanded for an inquiry as to the amount of said claims. 256 Fed. 273, 167 C. C. A. 445.

The case had been previously referred to a master, and after the second appeal to this court was again referred to him. On the hearing before the master the point was urged that a number of said lien claims had been bought up by and transferred to the National Surety Company, the surety on such bond, and that it, being obligated thereon to pay said

claims on the default of the contractor, could not set them up in priority to the mortgage in the distribution of the fund derived from the sale of the property.

The master ruled in regard to this contention that the investigation before him was restricted to the question as to whether the parties furnished labor and material used in the construction of the buildings under the contract of February 26, 1912, on or subsequent to said date, and declined to pass upon the question whether any of said claims had been purchased by the National Surety Company and were now being held by it, and, if so, whether such claims would not be entitled to prime the mortgage.

The mortgagee excepted to the master's report on four grounds:

First. That the claimants specified in the first exception had failed to produce sufficient evidence to support the allowance of their claims to priority, and that the master erred in holding as a matter of law that the filing of such proofs of such claim duly verified established a prima facie proof of the correctness and validity of their priority as furnishers of labor and material alleged to have entered into the construction of the building on the property covered by said mortgage.

Second. That the master should have found that the claim of the Panama Sash & Door Company had been by agreement subordinated to the claim of said mortgage.

Third. That the claims named in said third exception had all been acquired by the National Surety Company, and are represented and being urged by said surety company as assignee, and that the same in the hands of such assignee were not subject to priority over said mortgage.

Fourth. In holding that the costs advanced by Messrs. Grant & Grant, attorneys for the aforesaid lienholders, should be paid in priority to said mortgage.

The District Court overruled the exceptions to the master's report and entered a decree awarding priority to all of the claims reported as entitled thereto by the master, no ruling being made upon the point whether such claims were entitled to such priority if held by the National Surety Company, the surety on said bond.

The mortgagee assigned error on the part of the court in overruling the exceptions to the master's report and in decreeing (1) that the claims enumerated in exception third be paid in priority to the mortgage; (2) that the sum of $519.60 costs on the first appeal be paid to Messrs. Grant & Grant in priority to said mortgage.

As to the first exception to the master's report, while it is true that the master holds that the affidavit propounding such claims are prima facie proof of the facts therein stated, we do not think that the master based his finding alone upon the alleged prima facie proof of correctness and validity of the facts showing priority as appearing from these sworn claims. On the contrary, as to all of the claims mentioned in said first exception, the report takes them up seriatim and finds specifically from the evidence adduced the facts necessary to show that they were

for labor and material furnished after February 26, 1912. We find no error in the ruling on this point.

As to the second exception, we find no assignment of error upon the question of whether by agreement the Panama Sash & Door Company had waived its claim to prime the mortgage of appellant. We also do not find! any evidence of any agreement between the mortgagee and said Panama Sash & Door Company, but at most, an understanding between that company and its assignee, which would not confer any right on Mrs. Miller, the mortgagee.

Whether the master should have considered if the claims mentioned in exception three were purchased by the National Surety Company or on its behalf depends upon whether or not such question had been cut off, by not having been ruled upon in the former hearing before the District Court or were concluded by the previous decisions rendered by this court in this case.

On the first reference to the master he held the mortgage in favor of Mrs. Miller prior in lien to any of the other claims, whether transferred or not, and that it should be first paid out of the fund realized from the sale of the property. He did not, therefore; have occasion to rule on the effect of a purchase of any of them by the surety company.

On exceptions the District Court entirely disallowed the mortgage. The sale from Collins to Miller and the contract in which the bond was given was held to be simulated, and the lien of the mortgage to be null and void, and Mrs. Miller's claim ordered to be expunged and rejected. This was the sole question brought to this court and passed on in the case of Miller et al. v. C. C. Hartwell Co., Ltd., et al., 241 Fed. 636, 154 C. C. A. 394, in which this ruling was reversed.

On the second hearing before the District Court the mortgage was awarded! priority, and the lien creditors held to have had their liens divested by the giving of the bond with the National Surety Company as surety. This rendered any ruling on the effect of a purchase of any claim by the surety company unnecessary, and none was made.

[1] On appeal from this decree the question ruled in regard to the liens which were allowed was that the requisite petition citing all claimants and the surety on the bond for the assertion of the claims in concursus had not been filed, that no equivalent proceeding had taken place in the bankruptcy proceeding, and that these claimants were entitled to assert their liens against the fund. On neither appeal was the question raised, or properly before this court, as to the effect of a purchase of any claim entitled to prime the mortgage by the surety on the bond, of which this court had held:

"The existence of it inures also to the benefit of a mortgagee of the land upon which the building or improvement contracted for is erected, in that it provides a means of bringing about the satisfaction of claims of laborers and materialmen against the contractor."

The statute under which the—

"bond was given states its purpose to be 'to require owners to secure bond with solvent and sufficient surety from the undertaker, contractor, master mechanic, or engineer for the protection of all parties interested in the contract, as

their interest may appear, and which said surety is to stand in the place and stead of a defaulting undertaker, contractor, master mechanic or engineer.'" Miller v. Hartwell Co., 241 Fed. 636, 638, 154 C. C. A. 394, 397.

The very purpose of the arrangement between Collins and Singer, which was suggested by the agent of the surety company, was to give this bond as a means to protecting the loan secured by this mortgage against these claims. The former decision in the case did not involve or pass upon the effect of a purchase of any of said claims by the surety on said bond, or whether the claims in its hands, or in the hands of one holding for it, would be entitled to prime said mortgage.

We do not see wherein the surety on said bond would be entitled to set up any of said claims as against said mortgage as entitled to priority over the mortgage. The protection of Singer and "all persons interested in said contract as their interest may appear" was the purpose of the bond; the said surety standing in the place of Collins, by the express terms of said bond, in regard to all other persons. We are therefore of the opinion that the master should have passed upon such question as to whether any of said claims had been purchased by, or were owned in behalf of, said National Surety Company, and that such claims are not entitled to prime the mortgage.

A number of said debts appear to have been purchased by and directly assigned to the National Surety Company; others, to William K. Dart. The evidence in said case shows that the claims were not purchased by said Dart for himself, but with money furnished him by Mr. Grant, on whose account Mr. Dart was unable to state. Mr. Grant did not claim that he purchased said claims on his own account, but declined to state for whom on the ground of professional privilege. The evidence shows that Mr. Grant was at the time representing the National Surety Company and did represent them in the acquisition of several of said claims directly by the National Surety Company. The National Surety Company appears as the only person in the record interested in purchasing said claims, and in the absence of any further showing this would be sufficient to sustain a finding that the claims assigned to Dart were assigned to him in the interest of the National Surety Company.

[2] The last assignment of error challenges the awarding of priority of the claim of Messrs. Grant & Grant for the sum of $519.60, being the amount of costs paid by them to the attorneys for the mortgage creditor, covering the costs of appeal paid by Mrs. Miller on the first appeal, in which she prevailed. The judgment of the Circuit Court of Appeals awarded judgment in her favor for said $519.60 costs of said cause in this court. This gave the mortgagee the right to recover said costs out of and from the lien creditors. That the mortgagee did not prevail upon the rehearing of the case in the contention that these claims could not prime her mortgage would not in any way affect the costs of this court awarded her on her successful appeal and the payment of said sum to her by the attorneys for the lien claimants would not entitle them to have this sum repaid out of the fund in court, where

such payment will reduce the amount which her mortgage would·collect therefrom.

The effect of this judgment, therefore, awarding the full amounts of these claims to the claimants, and then awarding judgment to Messrs. Grant & Grant, attorneys for these claimants, for the amount of these costs paid on the first appeal, had the effect of requiring the repayment out of the fund payable to the mortgagee of the amount she had recovered for costs against these claimants on the first appeal, which we think was error. Jennings et al. v. Burton (C. C.) 177 Fed. 603.

The judgment of the District Court is therefore reversed, and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

### On Petition for·Rehearing.

In this case the District Court at first held that the sale from Collins to Singer, and the purchase-money notes, vendor's lien, and mortgage were invalid, and that the notes, in the hands of Mrs. Miller, could not be proved as a debt in this bankruptcy proceeding. This court reversed this ruling and held that the notes, transferred to Mrs. Miller, gave her a lien or privilege for the amount actually and in good faith advanced on the security of the mortgage notes held by her. It also found that the transfer of the title to Singer, and the giving of these notes and mortgage, were in order for Collins to procure this loan and to create a situation in which a bond could be given, pursuant to the Louisiana statute, to secure the faithful performance of the building contract and the payment by the contractor of amounts owing for labor and material for the protection, among others, of the mortgagee. The National Surety Company gave this bond with full knowledge of the above purposes.

If the purchase by Singer had been made in order to acquire the property for himself, and if he had given these notes secured by mortgage, which were transferred for value to Mrs. Miller, and if the money derived from the sale of the realty was being distributed to pay the mortgage and the mechanics' and material lien debts, the surplus, if any, to go to Singer, the direct obligee of the Surety Company's bond, it is clear that a lien debt which had been purchased by the surety company, and against which its bond obligated it to hold Singer harmless, would not be permitted to take the proceeds of the sale of the realty from Singer. The mortgage created by Singer in the act of sale was not only in favor of the vendor but "of any subsequent holder or holders of said notes," which notes were drawn by the purchaser Singer to his order and indorsed by him, and the bond of the National Surety Company "inures also to the benefit of a mortgagee of the land on which the building or improvement * * * is erected," etc. Miller v. C. C. Hartwell Co., 241 Fed. 636, 639, 154 C. C. A. 394, 397.

It has been sufficiently shown that the question of priority between the mortgagee and National Surety Company as assignee of these lien debts arising out of its contract on its bond has not been passed on in the previous decisions of this court. Carroll v. Carroll, 16 How. 287, 14 L. Ed. 936. We think, if these debts are now payable to the Na-

tional Surety Company, they should not be decreed to withdraw this money, the proceeds of the mortgaged property, from the mortgage.

As to any of the claims, except those enumerated in exception 3 to the master's report, the opinion heretofore filed sustains the finding of the master. It is only as to the claims therein stated, and the claim of Messrs. Grant & Grant for $519.60, that the decree is reversed; as to all other claims it is affirmed. The cost of appeal will be paid, one-half by appellant and one-half by the appellees named in exception 3 to the master's report. Let the judgment of this court be so framed.

The petition for rehearing is thereupon denied.