(105 So. 7)

No. 25090.

## NATIONAL SURETY CO. v. COLLINS.

(April 27, 1925. Rehearing Denied June 22, 1925.)

*(Syllabus by Editorial Staff.)*

**Judgment ⚙=676 — Bankruptcy proceedings held to conclude claim of surety, on bankrupt's bond as contractor, against accommodation assignee of bankrupt's property.**

Where contractor, after making sham assignment, entered into building contract with assignee and gave bond with surety for payment of labor and materials under Act No. 134 of 1906, judgments in bankruptcy proceedings of contractor, in which assignee turned over property to trustee in bankruptcy and so discharged his obligations to bankrupt, *held* to preclude action by surety against assignee, notwithstanding ex parte order, several days before final bankruptcy decree, purporting to reserve to surety right of recoupment against parties to building contract, as that order was not intended to confer any rights which surety did not already have, or to violate mandate of United States Circuit Court of Appeals.

Appeal from Civil District Court, Parish of Orleans; H. C. Cage, Judge.

Action by the National Surety Company against John D. Collins, in which Isidore Singer was garnished. From a judgment dismissing garnishment process, plaintiff appeals. Affirmed.

William B. Grant, of New Orleans, for appellant.

A. D. Danziger, of New Orleans (P. H. Stern, of New Orleans, of counsel), for appellee Singer.

O'NIELL, C. J. This is an appeal from a judgment dismissing a garnishment process. It was issued against one Isidore Singer, as garnishee, on a judgment against John D. Collins in favor of the National Surety Company, for $6,133.69.

Collins owned three vacant lots, which he had bought from one Paillet, and on which he had paid $400 and owed a balance of $2,700 of the purchase price. The debt of $2,700 was represented by Collins' promissory note, secured by mortgage and vendor's lien on the lots. The note was held by Felix J. Dreyfus as collateral security for a loan of $1,500. Collins, being a building contractor, undertook to build three houses on the lots; but, before he had quite finished the job, he found it necessary to negotiate a loan to pay the workmen and furnishers of materials. He applied to Dreyfus for a loan of $6,600, which was the amount needed to pay the mortgage note held by Dreyfus, and pay for the materials furnished and to be furnished, and for the work done and to be done on the buildings. Dreyfus agreed to make the loan; but, in order to protect himself against the recording of liens in favor of workmen or furnishers of materials, he required that Collins should give a bond and surety, according to the provisions of the statute on the subject (Act 134 of 1906, p. 223), or, as the statute says, for "the true and faithful performance of the contract [to complete the buildings],

and the payment of all subcontractors, workmen, laborers, mechanics, and furnishers of materials." An agent of the National Surety Company was consulted, and was willing to furnish the bond; but it was deemed impracticable for Collins to give a bond according to the statute while he was building the houses for himself, and therefore had nobody to make a contract with. The agent of the surety company suggested that Collins should convey the lots to some third party, who would be interposed merely as an accommodation, and then enter into a contract to complete the buildings for him. Accordingly, Collins made a conveyance of the lots to his friend, Singer, who, without being really concerned in the transaction, lent his name as an accommodation to Collins. It was stated in the deed that the price was $7,500, and that Singer paid $900 in cash; and for the balance of the supposed price Singer gave three promissory notes for $2,200 each, signed and indorsed by him, and secured by mortgage and vendor's lien on the property. At the same time, Collins, as contractor, entered into a contract with Singer, as owner, to complete the buildings, and gave bond for $6,600, according to the statute, with the National Surety Company as surety, for the true and faithful performance of the contract, and for the payment of all subcontractors, workmen, laborers, mechanics, and furnishers of materials. The three mortgage notes for $2,200 each were then delivered to Dreyfus, who canceled the Paillet mortgage of $2,700, and paid other sums to and for Collins, amounting to $559. Dreyfus was to pay out the balance of the $6,600 as it would be needed to pay workmen and furnishers of material. Collins then proceeded to complete the buildings, but, before the work was finished, Dreyfus discovered that workmen and furnishers of materials were recording claims against the property and obtaining liens that might interfere with the collection of his loan, and he therefore declined to make further payments on the loan. Collins soon after went into bankruptcy in the United States District Court for the Eastern District of Louisiana. A formal statement by Singer was filed in the bankruptcy proceeding, acknowledging that the three lots and buildings were the property of the bankrupt, Collins. Singer then made a formal assignment of the property to the trustee, who sold it at public auction under orders of the United States District Court. Dreyfus transferred his three notes, secured by the mortgage vendor's lien, to Mrs. Isabel Danziger Miller, and she filed claim on them in the bankruptcy proceedings. The C. C. Hartwell Company and numerous other creditors of Collins, holding claims for materials furnished or work done on the buildings, and claiming liens on the property, opposed the claim of Mrs. Miller, on the ground that the transaction by which Collins had pretended to transfer the lots to Singer was a sham or fraudulent conveyance. The United States District Court sustained the oppositions, holding that the claim of Mrs. Miller could not be proven as a debt in the bankruptcy proceeding. On appeal to the Circuit Court of Appeals, Fifth Circuit, the judgment was reversed; the claim of Mrs. Miller was adjudged to be secured by a mortgage and lien for the amount which Dreyfus had actually paid or advanced on the security of the three mortgage notes, and that the claim was collectible out of the proceeds of the sale of the mortgaged property. There was no decision then, either by the United States District Court or by the Circuit Court of Appeals, as to whether Mrs. Miller's claim should be paid in preference to or was subordinate to the claims of her opponents having liens for materials furnished or work done on the buildings. The case was remanded for further proceedings consistent with the ruling. See Miller v. C. C. Hartwell Co. et al., 241 F. 636, 154 C. C. A. 394.

On the second trial of the oppositions, the

United States District Court held that the bankruptcy proceeding had had the effect of a concursus proceeding under the provisions of the Act 134 of 1906, and that, by the terms of the statute, the opponents, workmen and materialmen, had by their failure to object to the solvency of the surety on the contractor's bond, in the bankruptcy proceeding, released their liens on the property and on the proceeds of the sale of it, and were remitted to a suit on the bond of the surety company. On appeal to the Circuit Court of Appeals, it was held that the claims of the laborers and materialmen who had furnished labor or materials before the lots were transferred by Collins to Singer were governed, not by the Act 134 of 1906, but by article 3274 of the Civil Code, and that, by the terms of the article of the Code, the claims were subordinate to Mrs. Miller's mortgage, because the claims of the opponents were not recorded within seven days from the date of the obligation, so as to preserve a lien on the property. With regard to the claims for labor done and materials furnished after Collins had transferred the property to Singer, which claims were governed by the Act 134 of 1906, it was held that the bankruptcy proceeding had not had the effect of a concursus proceeding under the act of 1906; that the claimants were not remitted to their remedy on the bond, had not lost their lien on the property or on the proceeds of the sale of it, and were entitled to have their claims paid in preference to the mortgage claim of Mrs. Miller. The case was remanded to the United States District Court to ascertain the amounts of the claims of the workmen and materialmen whose work was done or material furnished after the sale of the property by Collins to Singer. See C. C. Hartwell Co. et al. v. Miller, 256 F. 273, 167 C. C. A. 445.

The case was again referred to the master, and on the hearing before him it was claimed on behalf of Mrs. Miller that the claims of the opponents, workmen and materialmen, had been bought up by the National Surety Company, and that the latter, being obligated on the bond to pay these claims on default of the contractor, could not set them up against the mortgage claim of Mrs. Miller in the distribution of the proceeds of the sale of the property. The master declined to rule on the question, maintaining that the only matter to be determined by him was to ascertain the amounts of the claims due for work done or materials furnished after the property was transferred by Collins to Singer. The master reported in favor of the opponents. Mrs. Miller excepted to the report on several grounds, the main complaint being that the claims of the opponents, workmen and materialmen, had been bought up by the National Surety Company, and were being asserted by the company as assignee, and that the claims in the hands of such assignee, should not be paid in preference to the claim of Mrs. Miller. The District Court overruled the exceptions to the master's report, and entered a decree giving the workmen and materialmen a preference over Mrs. Miller in the distribution of the proceeds of the sale of the property. There was no ruling on the question whether the claims of these workmen and materialmen would be entitled to the preference if the claims were owned by the National Surety Company. On appeal to the Circuit Court of Appeals, it was decided that the surety company could not, as assignee of the claims of the workmen and materialmen, compete with Mrs. Miller, as mortgagee, in the distribution of the fund derived from the sale of the mortgaged property. See Miller v. C. C. Hartwell Co. et al. (C. C. A.) 271 F. 385. The court said:

"The very purpose of the arrangement between Collins and Singer, which was suggested by the agent of the surety company, was to give this bond as a means to protecting the loan secured by this mortgage against these claims. The former decision in the case did

not involve or pass upon the effect of a purchase of any of said claims by the surety on said bond, or whether the claims in its hands, or in the hands of one holding for it, would be entitled to prime said mortgage.

"We do not see wherein the surety on said bond would be entitled to set up any of said claims as against said mortgage as entitled to priority over the mortgage. The protection of Singer and 'all persons interested in said contract as their interest may appear' was the purpose of the bond; the said surety standing in the place of Collins, by the express terms of said bond, in regard to all other persons. We are therefore of the opinion that the master should have passed upon such question as to whether any of said claims had been purchased by, or were owned in behalf of, said National Surety Company, and that such claims are not entitled to prime the mortgage."

On a petition for rehearing, the court said:

"If the purchase by Singer had been made in order to acquire the property for himself, and if he had given these notes secured by mortgage, which were transferred for value to Mrs. Miller, and if the money derived from the sale of the realty was being distributed to pay the mortgage and the mechanics' and material lien debts, the surplus, if any, to go to Singer, the direct obligee of the surety company's bond, it is clear that a lien debt which had been purchased by the surety company, and against which its bond obligated it to hold Singer harmless, would not be permitted to take the proceeds of the sale of the realty from Singer."

The case was remanded for further proceedings consistent with the ruling of the Circuit Court of Appeals, that the National Surety Company could not, as assignee of the claims of the workmen and materialmen, be paid in preference to Mrs. Miller, as mortgagee, out of the fund derived from the sale of the bankrupt's three houses and lots.

Pursuant to the mandate of the United States Circuit Court of Appeals, the United States District Court entered a final decree, ordering the trustee to pay out the fund in his hands for distribution, amounting to $7,-611.23, thus: First, to pay the costs, charges, commissions and fees due to the referee, the trustee, special master, etc., amounting to $347.53; second, to pay the claims of four opponents who had liens for materials furnished or work done on the buildings, and whose claims had not been transferred to the National Surety Company, amounting to $762.56; third, to pay Mrs. Miller's mortgage note, amounting, with interest, attorneys fees and costs, to $5,766.07; and, finally, to pay the balance of the fund, $735.57, to the National Surety Company, as subrogee, to be applied to the claims which the surety company had bought up from 16 workmen and materialmen, and which greatly exceeded in amount the $735.37. It was finally ordered that, upon making that distribution of the fund in his hands, the trustee in bankruptcy should be discharged, his bond canceled and the surety released.

Six days before the United States District Court entered its final decree, the National Surety Company, on suggesting that the company had discharged and become subrogated to the claims of the aforesaid 16 workmen and materialmen, obtained an ex parte order declaring "that the right of the company to pursue its remedy against any of the parties to said building contract" were fully preserved, and that the final decree distributing the fund should "be without prejudice to the right of the National Surety Company to recoup its loss against any of its debtors under said building contract."

Collins did not receive his discharge in bankruptcy. In fact, he did not apply for it. When the National Surety Company brought this suit against him in the state court, soon after the final decree was rendered in the bankruptcy proceeding, he confessed judgment for all that was claimed.

Singer, before answering the interrogatories propounded to him as garnishee, pleaded that the National Surety Company was bound by the judgment that was finally rendered by the Circuit Court of Appeals, in the bankruptcy proceeding, in which the National Surety Company was a party litigant. And, answering the interrogatories, Singer

denied that he had ever owed Collins anything.

The civil district court held that, if Singer was indebted to Collins under the building contract, as the surety company contended, the obligation existed before and when Collins went into bankruptcy, and was thereby transferred to the trustee, for the benefit of the creditors, as an asset of the bankrupt, though not on his schedule; and that the proper method by which the surety company should have urged its claim was through the bankruptcy proceeding, where the surety company had already had its day in court.

We affirm the ruling of the civil district court. The National Surety Company was a party litigant in the bankruptcy proceedings which we have described. The company's participation in the litigation was, in most instances, carried on in the names of the workmen and materialmen whose claims the company was obliged to pay or had paid. But it was made plain, if not admitted, in the petition of the surety company in this suit against Collins, that the surety company was the real party at interest in the litigation that was conducted ostensibly in behalf of the workmen and materialmen who opposed Mrs. Miller's claim. The surety company's claim of $6,133.69, for which the company got judgment against Collins, was made up of the following items: (1) $3,638.23 for the claims of the 16 workmen and materialmen paid by the company, amounting to $4,-373.80, less the $735.57 given to the surety company by the final decree in the bankruptcy proceeding; (2) $995.46 for costs of court, taking testimony, printing briefs, etc., expended by the surety company, "in the establishment and prosecution of said claims in the said bankruptcy proceedings;" and $1,500 for the services of the surety company's attorney, "in the prosecution of the claims for labor and material, attending three hearings, with numerous sittings, before the referee in bankruptcy, five hearings before the United States District Court, three hearings before the United States Circuit Court of Appeals, and one appearance before the Supreme Court of the United States." We neglected to say, in our statement of the bankruptcy proceedings, that the National Surety Company—whether in its own name or in the names of the workmen and materialmen the record does not show—made an unsuccessful application to the United States Supreme Court for a writ of certiorari to review the judgment that was finally rendered by the Circuit Court of Appeals in the bankruptcy proceedings.

The several judgments and decrees rendered in the bankruptcy proceedings have settled the issue which the National Surety Company is attempting to revive by this garnishment proceeding. It is settled that the sham transfer which Collins made of his property to Singer, and which was made at the suggestion of the agent of the surety company, was not fraudulent, or injurious to any one; and it has been decided that the surety company could not, by discharging the debts that were due by Collins to the workmen and materialmen, become subrogated to a claim against any party whom the surety company was obligated by its bond to protect against a default on the part of Collins. The outstanding and controlling fact in this case is that, as far as the National Surety Company is concerned, Singer discharged his obligation to Collins when he turned over to the trustee in bankruptcy the three houses and lots which he had allowed to be placed in his name as an accommodation to Collins.

Appellant relies too much upon the ex parte order granted by the United States District Court, several days before the court rendered its final decree in the bankruptcy proceeding, and purporting to reserve to the surety company whatever right it had to recoup its loss from the parties to the building contract. The ex parte order was not intend-

ed to do violence to the mandate of the United States Circuit Court of Appeals, or to confer or recognize any right which the surety company did not already have.

The judgment is affirmed.